**KENTILE, INC., Plaintiff,**

v.

**LOCAL 457, UNITED RUBBER, CORK, LINOLEUM & PLASTIC WORKERS OF AMERICA, AFL–CIO, Defendant.**

**No. 63–C–1131.**

United States District Court
E. D. New York.
April 17, 1964.

Weil, Gotshal & Manges, New York City, for plaintiff, by Marshall C. Berger, New York City, for the motion.

Murphy & Sheehan, Mineola, N. Y., Thomas Sheehan, Mineola, N. Y., of counsel, in opposition.

RAYFIEL, District Judge.

This is an action under Section 301 of the Labor Management Relations Act (Section 185 of Title 29 U.S.Code) and Section 1331 of Title 28 of said Code. The complaint alleges, *inter alia*, that the defendant, a labor union which is the collective bargaining representative for the plaintiff's employees at its plant in Brooklyn, New York, violated certain provisions of Section 8(b) (1) and (2) of the National Labor Relations Act (Section 158(b) (1) and (2) of Title 29 U.S.Code.) The plaintiff seeks to enjoin the defendant from going forward with an arbitration proceeding which it instituted pursuant to the collective bargaining agreement entered into between the parties and has moved, by order to show cause, to stay the said arbitration proceeding *pendente lite*. The order to show cause contained a temporary restraining order staying the arbitration proceeding pending the hearing and determination of the motion. The defendant, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, has moved to dismiss the complaint and dissolve the temporary restraining order.

The facts, briefly, are as follows: From January 15, 1963 to July 15, 1963 employees of the plaintiff at its Brooklyn plant, members of the defendant union, engaged in a strike against it. During the course thereof the plaintiff hired a substantial number of new employees to replace those on strike. As is often the case in situations of this kind, the strike was marked with a great deal of bitterness on both sides.

On July 15, 1963 the strike was settled and the parties entered into a collective bargaining agreement under the terms of which the replacements hired by the plaintiff during the strike were allowed to remain as employees at the plaintiff's sole discretion, with the proviso, however that they become members of the defendant within thirty-one days after the signing of the agreement (See Articles 29 and 2).

It is the plaintiff's contention that the union "engaged in a calculated policy of trying to prevent the replacement employees from joining them." It charges that the officers and employees of the union made themselves unavailable during the thirty-one day period, so that the replacement employees were unable to file membership applications or pay initiation fees, and that "some eighty-five replacement employees desired to become members of defendant but they could not simply because the defendant just made it impossible for them to join."

Upon the expiration of the thirty-one day period the defendant demanded that the plaintiff discharge all of the replacement employees who had not joined the union. The plaintiff refused, and filed a charge against the defendant with the Second Region of the National Labor Relations Board (the Board), alleging that the conduct of the union constituted an unfair labor practice in violation of Section 8(b) (1) (A) and (2) of the National Labor Relations Act (Section 158(b) (1) (A) and (2) of Title 29 U.S.C.)

Shortly thereafter the attorneys for the defendant requested the Federal Mediation and Conciliation Service to initiate an arbitration proceeding pursuant to Article 14 of the agreement to determine whether the refusal by the plaintiff to discharge the replacement employees who had not become members of the un-

ion was a violation of the said agreement. The plaintiff informed the Service that it had filed the charge against the union hereinabove referred to, and refused to participate in the arbitration procedure. Upon receipt thereof the Service advised the parties that in its opinion the filing of the charge did not "preclude it from administering cases in which there is an assertion of a violation of the collective bargaining agreement." The plaintiff then commenced this action and obtained the aforementioned temporary restraining order.

The Board's trial examiner, before whom the charge had been heard on January 20, 21, 22 and 23, 1964, issued a comprehensive decision, dated "April 13, 1964" (sic). He reviewed the evidence adduced before him and concluded, at page 5, "that, union officials, having failed during negotiations to obtain the Employer's agreement to discharge the replacements upon settlement of the strike, designed, planned and carried out a definite program of evasion and inaction with the full intent of gaining the same end: ridding the plant of the so-called 'scabs' in order to provide jobs for the loyal strikers. From the Union's point of view this plan no doubt seemed plausible, logical and most appropriate. Having obtained a new union-security clause, requiring membership by a certain date, all that appeared necessary was to avoid, by inaction, permitting the strike breakers to meet the requirements and then demand their discharge." He then went on to say, at page 6, "It is clear, and is concluded and found, that the real motive for the Union's demand for the discharge of the individuals listed in 'Appendix A' was to reach the above-noted end: ousting the 'scabs' to provide jobs for its loyal members. The genuine reason, then, was other than failure to comply with the contract requirements, and the Employer was fully justified in refusing to comply with the demand."

He pointed out that the courts have held that labor unions, in acquiring union-security provisions in contracts, must assume certain "fiduciary duties" to prospective members. He cited N. L. R. B. v. Hotel, Motel and Club Employees Union, Local 568, 3 Cir., 320 F.2d 254, in which the Court said, at page 258,

"The comprehensive authority vested in the union, as the exclusive agent of the employees, leads inevitably to employee dependence on the labor organization. There necessarily arises out of this dependence a fiduciary duty that the union deal fairly with employees. See N. L. R. B. v. International Woodworkers of America, 264 F.2d 649 (9th Cir. 1959), cert. den. 361 U.S. 816, 80 S.Ct. 56, 4 L.Ed.2d 63 (1959); International Union of Electrical, Radio & Machine Wkrs. v. N. L. R. B., 113 U.S.App.D.C. 342, 307 F.2d 679 (1962), cert. den. 371 U.S. 936, 83 S.Ct. 307, 9 L.Ed.2d 270 (1962). At the minimum, this duty requires that the union inform the employee of his obligations in order that the employee may take whatever action is necessary to protect his job tenure. International Union of Electrical, Radio & Machine Wkrs. v. N. L. R. B., supra. The union may not evade this duty, as the Local did here, and then demand the dismissal of the employee when he becomes delinquent in the payment of his dues."

The examiner found (page 7 of his report) that the defendant had "violated and is violating Section 8(b) (2) of the Act by attempting to cause Kentile, Inc., to discriminate against employees in regard to their hire and tenure of employment in violation of Section 8(a) (3), by demanding their discharge in the letter of August 19, 1963, and by demanding arbitration of the issue." He then prepared a recommended order in which the union was ordered to cease and desist from the acts complained of, including its request for the discharge of the replacement employees.

The attorneys for the plaintiff point out that it is still necessary to stay the arbitration proceeding, since the trial

examiner's decision and recommended order must now be reviewed by the Board on the union's appeal, and that even after affirmance thereof it would not be binding on the union unless and until the Court of Appeals should issue an enforcement decree, all of which would take a considerable length of time.

To require the plaintiff to now proceed with arbitration for the purpose of determining whether it has violated the collective bargaining agreement by refusing to discharge the replacement employees who had not become members of the union would, in the light of the four day hearing before the trial examiner and his decision, be an exercise in futility. The question to be resolved by arbitration having been fully tried and decided by the trial examiner it would be repetitious to arbitrate the very same issue.

I am mindful of the principle enunciated in Textile Workers of America v. Lincoln Mills, of Ala., 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424, and the recent case of Packinghouse Workers v. Needham, decided by The United States Supreme Court on March 9, 1964, 84 S.Ct. 773, that Congressional policy favored the enforcement of agreements to arbitrate grievance disputes. In none of those cases, however, had there been a decision by a trial examiner of the Board which had passed upon the very question to be arbitrated. All of the above-cited actions were commenced by the unions involved under Section 301(c) of the Labor Management Relations Act (Section 185(c) of Title 29 U.S.Code) to *compel* arbitration or to *enforce* the decisions of arbitrators the Supreme Court in each instance holding that there was jurisdiction under that Section to grant

the relief requested. Here, however, we have the converse situation, an action to stay arbitration pending the decision of the Board on a charge filed by the employer involving the very question to be arbitrated, *and in which there has been a preliminary finding against the union by the Board's examiner.*

The cases cited above, as well as Smith v. Evening News Ass'n., 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246, hold that Section 301, supra, "has substantive content and that Congress has directed the courts to formulate and apply federal law to suits for violation of collective bargaining contracts. There is no constitutional difficulty and § 301 is not to be given a narrow reading." (Smith v. Evening News Ass'n., supra, 371 U.S. at p. 199, 83 S.Ct. at p. 270, 9 L.Ed.2d 246).

The case at bar appears to be the kind of case to which reference was made in Smith v. Evening News Ass'n., when Mr. Justice White said, at page 197 of 371 U.S., at page 269 of 83 S.Ct., 9 L.Ed.2d 246,

"The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301. If, as respondent strongly urges, *there are situations in which serious problems will arise from both the courts and the Board having jurisdiction over acts which amount to an unfair labor practice, we shall face those cases when they arise."* (Emphasis mine).

The problem we face in the case at bar stems from the fact that the Board, under Section 10 of the National Labor Relations Act (Section 160 of Title 29 U.S. Code), and the Federal Mediation and Conciliation Service, under Article 14 of the collective bargaining agreement of July 15, 1963, have concurrent jurisdiction over the dispute between the parties. Inasmuch as there has been a preliminary disposition of the matter by the decision of the trial examiner, this Court has

the power to stay the arbitration proceeding pending the conclusion of the proceedings before the National Labor Relations Board. See Black-Clauson Co. Inc. v. International Assoc. of Machinists, 2 Cir., 313 F.2d 179.

Accordingly, the plaintiff's motion for a stay of the arbitration proceeding pending the conclusion of the proceedings before the National Labor Relations Board is granted, and the defendant's motion to dismiss the complaint is denied.

Settle order on notice.