Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, NEW YORK LOCAL, Respondent.

United States District Court
S. D. New York.

June 5, 1964.

Jacques Schurre, National Labor Relations Board, New York City, for petitioner.

Mortimer Becker, New York City, Edward Schlesinger, New York City, of counsel, for respondent.

TENNEY, District Judge.

This is a petition for a preliminary injunction pursuant to Section 10(*l*) of the National Labor Relations Act (herein called "Act") 29 U.S.C. § 160(*l*) as amended, 73 Stat. 544–45 (1959), 29 U.S.C. § 160(*l*) (Supp.1963). Petitioner, the Regional Director of the National Labor Relations Board, seeks a preliminary injunction against the respondent labor organization pending a final disposition by the Board of an unfair labor practice charge filed on January 15, 1964, by the

Westinghouse Broadcasting Company, Inc., (herein called "Westinghouse").

The charge filed by Westinghouse alleged that respondent has engaged in and is engaging in an unfair labor practice within the meaning of Section 8(e) of the Act, 73 Stat. 543–44 (1959), 29 U.S.C. § 158(e) (Supp.1963). Section 8(e) in pertinent part provides:

"It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforcible and void * * *."

The petition is predicated upon the conclusion of the Board that it has reasonable cause to believe that the respondent is engaged in an unfair labor practice and that a Board complaint should issue thereon. The petition was brought on by an Order to Show Cause dated April 29, 1964 and returnable May 12, 1964. A hearing was held on May 12, 1964.

At the hearing, no witnesses were called. The attorneys for the Board, Westinghouse and respondents, made their positions known by way of oral argument and memoranda of law submitted to the Court.

During the course of the hearing, respondent consented to being enjoined from certain specified activities pending the disposition by the Board of the unfair labor practice charge. However, respondent does object to that part of the injunction which prevents it from proceeding to arbitration, to arbitrate *inter alia* grievances arising from a breach by Westinghouse of Paragraph 7 of the collective bargaining agreement—the breach being the hiring by Westinghouse of a helicopter pilot without a representa-

tion required by that paragraph, viz., that he would be paid the same compensation as he would have received had he been hired by, or an employee of, Westinghouse. It is this paragraph that Westinghouse contends violates Section 8(e) of the Act.

While there are other matters that respondent seeks to arbitrate, they are more closely related to the companion motion by Westinghouse (64 Civ. 1429) to stay the *entire* arbitration and will be discussed in the disposition of that motion.

Upon the entire record, the Court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Petitioner is Regional Director of the Second Region of the National Labor Relations Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. On January 15, 1964, Westinghouse, pursuant to the provisions of the Act, filed a charge with the Board alleging that respondent, the American Federation of Television and Radio Artists, a labor organization, has engaged in and is engaging in an unfair labor practice within the meaning of Section 8(e) of the Act.

3. The aforesaid charge was referred to petitioner as Regional Director of the Second Region of the Board.

4. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work.

(b) Respondent maintains its offices in the Borough of Manhattan, City of New York, and, at all times material herein, has been engaged within this judicial district in transacting business and in

promoting and protecting the interests of its employee members.

(c) Westinghouse, a Delaware corporation with offices in New York City, is the owner and operator of radio broadcasting station WINS. Its gross revenue derived from the operation of said radio station is in excess of $1,000,-000. per annum.

(d) On or about August 6, 1963, respondent and Westinghouse executed a collective bargaining contract for a term expiring on February 2, 1966, which contains the following provision, designated as Paragraph 7:

> "Nothing in this agreement shall be construed as preventing WINS from buying package shows or other broadcast material made exclusively for use over WINS from independent contractors *providing, however, that WINS, in its contract with the packager receives a representation and warranty that the performers on the package program or other broadcast material have been paid compensation not less than the compensation which would have been payable to said performers if WINS had produced the program or other broadcast material itself.*" (Emphasis added).

(e) On October 21, 1963, Westinghouse and Carson Helicopters (herein called "Carson") entered into a three-year contract, pursuant to which Carson agreed to make available to Westinghouse a helicopter and a licensed pilot to broadcast traffic reports, special news events, and other materials requested by Westinghouse, said pilot to be an employee of, and to be paid by, Carson. This contract does not contain a representation and warranty that the pilot will be compensated in accordance with Paragraph 7 of the collective bargaining agreement.

(f) On or about November 20, 1963, respondent, pursuant to the arbitration provision of its aforesaid contract with Westinghouse, served Westinghouse with a written request to arbitrate "a dispute

which has arisen between us concerning the employment of a Helicopter Reporter on Radio Station WINS." The demand for arbitration sets forth in greater detail the areas to be covered. Respondent, by the demand, sought to arbitrate *inter alia* a grievance that Westinghouse had "arranged to purchase the services of a Helicopter Reporter as a package show from Carson Helicopters, Inc., [and that in said contract, notwithstanding Paragraph 7 of the collective bargaining agreement] * * * [t]he Company has not made available to AFTRA a representation or warranty that the Helicopter Reporter so employed has been paid or will be paid not less than the compensation agreed upon by the Company as the compensation payable to such Helicopter Reporter if the Company had produced the program itself."

Westinghouse declined to arbitrate, whereupon respondent filed a demand for arbitration with the American Arbitration Association.

(g) The charge against respondent is true in that Paragraph 7 of the collective bargaining agreement, set forth in Findings of Fact 4(d) and the basis of the charge by Westinghouse, is an unfair labor practice within the purview of activities proscribed by Section 8(e) of the Act.

(h) Said conduct set forth in subdivision 4(f) of the Findings of Fact will affect commerce within the meaning of Section 2(6) and (7) of the Act.

(i) It may fairly be anticipated that unless enjoined, respondent will continue to implement and give effect to Paragraph 7 of the collective bargaining agreement by pressing its demand to arbitrate a grievance arising under said paragraph.

## DISCUSSION

Respondent did not file an answer to the petition. However, in its affidavit in opposition and during the course of the hearing it chose to controvert certain allegations set forth in the petition.

Respondent's position with regard to Finding of Fact 4(f) is that, by its demand, it sought to have the arbitrators render a decision that Westinghouse failed to execute an oral agreement entered into between the parties on October 10, 1963, said agreement covering the terms and conditions of employment of the pilot and that the pilot would be an employee of Westinghouse. At this juncture the Court need not decide the efficacy of this oral agreement or whether it execution or lack thereof is an arbitrable issue. That issue is more clearly within the purview of the companion motion by Westinghouse, viz., 64 Civ. 1429. It is clear, however, from the demand for arbitration quoted in Finding 4(f) supra, and from the thrust of the arguments set forth in respondent's memorandum of law that *inter alia* the Union is seeking to "implement or give effect" to Paragraph 7 of the agreement by its demand to arbitrate a grievance arising from its breach.

Respondent also controverts the allegation by petitioner that there is reasonable cause to believe that Paragraph 7 is within the purview of Section 8(e) of the Act. It is to this contention that the Court will now direct itself.

Section 10(*l*) of the Act provides that whenever it is charged that a Section 8(e) unfair labor practice is being committed the Board shall cause an investigation to be made. If, after such investigation, the Regional Officer has "reasonable cause to believe that such charge is true" a complaint shall issue and the Regional Officer may petition any District Court on behalf of the Board for appropriate injunctive relief pending the final adjudication of the Board with respect to the complaint. Upon the filing of any such petition for a preliminary injunction the District Court has jurisdiction to grant such injunctive relief "as it deems just and proper." Thus, in a proceeding for a preliminary injunction, the Court's function is a limited one.

It is not necessary for the Court, in order to grant the relief requested,

to find that the charges are true, but only whether the Board has reasonable cause to believe that they are true. This requirement is met by a showing of sufficient evidence that there was a basis for the Board's finding. Douds v. International Longshoremen's Ass'n, 242 F.2d 808, 810 (2d Cir. 1957).

■ The Court therefore is not required to decide whether in fact the charge is true, whether in fact a violation of the Act has been committed. That determination is left, not to the District Court, but rather to the Court of Appeals on the review of the Board's ultimate findings. Douds v. Milk Drivers and Dairy Employees Union, 248 F.2d 534 (2d Cir. 1957).

After resolving the disputes as to the facts, the Court is presented with the narrow question of whether there is reasonable cause to believe that Paragraph 7 of the collective bargaining agreement violates Section 8(e) of the Act.

As to this question, the Court is faced with a conflict between the Board's position and that of a District Court on the one hand, and a decision of the Court of Appeals for the District of Columbia on the other.

The Board has consistently held when so-called "standards clauses" have been alleged to violate Section 8(e), that these clauses, which in effect limit (prohibit) the employer from subcontracting with certain other employers, constitute an agreement whereby such employer "agrees to cease or refrain from * * * doing business with any other person", and as such, a violation of Section 8(e).

In Local 585, Bhd. of Painters, Decorators & Paper Hangers, 144 N.L.R.B. No. 22 (1963), the Board held the following clause to be violative of Section 8(e):

"The Company may, during the life of this Agreement, award contracts for the execution of construction work in this plant to contractors who *pay the prevailing wage scale in the area and grant to their employees prevailing work conditions.*" (Emphasis added).

In striking down the provision, the Board stated that:

"Article I, Section 3, permits Falstaff to award construction work to outside contractors but it requires that such contractors must 'pay the prevailing wage scale in the area and grant to their employees prevailing working conditions.' This provision cannot be construed as a restriction on subcontracting for the preservation of jobs and job rights for Falstaff's employees represented by Respondents. [A claim very similar to that made by respondent in the case at bar.] Its plain purpose is to limit the persons with whom Falstaff may do business. As such this clause is proscribed by Section 8(e) of the Act." Id. at 6–7.

In United Mine Workers of America, 144 N.L.R.B. No. 29 (1963), the following clause was held void under Section 8(e):

"It is recognized that when signatory operators mine, prepare, or procure or acquire under subcontract arrangements bituminous coal mined under certain terms and conditions less favorable than those provided for in the contract, they deprive employees of employment opportunities, employment conditions and other benefits which these employees are entitled to have safeguarded, stabilized and protected. Accordingly, the Operators agree that all bituminous coal mined, produced or prepared by them * * * or procured or acquired by them * * * under a subcontract agreement shall be or shall have been mined or produced *under terms and conditions which are as favorable to the employees as those provided for in this contract.*" (Emphasis added)

On its face at least, this clause has as its *raison d'etre* a desire by the Union to protect the wage scale it has established with the Company, and the conditions of employment of its members. In this respect it is an even stronger case than the case at bar for viewing the

clause as a "legitimate [attempt] . . . by the union to protect and preserve the work and standards it has bargained for." Retail Clerks Union Local 770, etc. v. N. L. R. B., 111 U.S.App.D.C. 246, 296 F.2d 368, 374 (D.C.Cir.1961) (dictum). It may also be argued that the "[U]nion may be attempting [by this clause] to remove the economic incentive for contracting out, and thus to preserve the work for the contracting employees." Ibid.

Nevertheless, the Board, looking to the substance of the clause rather than its form, struck down the provision:

"It is at once apparent that such provisions establish a class of employers within which the Signatory Operators are precluded from dealing in the purchase of coal and that the Operators are required to cease doing business with such employers * * *. Furthermore, it is apparent that whether or not the Signatory Operators were dealing at the time with a particular employer they are required to refrain from dealing with it, if its employees do not work under standards as favorable as those set forth in the contract between the Operators and the Union." (Id. at 8).

* * * * * *

"It is argued that the contract provision removes one incentive, lower wage costs to contract out unit work and therefore protective of unit work, primary in objective and lawful under Section 8(e). [A similar argument was made in the case at bar] * * * [T]he principal protection afforded by the clause [however] is to employees of the *subcontractors* since the loss of work to contract unit employees is permitted. Moreover, the same argument about reducing the incentive to subcontract can be and has been made in behalf of clauses limiting subcontracting to other employers under contract with the Union. But that argument has previously been re-jected by the Board with the approval of the Court." Id. at 11. (Emphasis added)

The District Court for the Southern District of California, in Kennedy v. Local 683, Int'l Bhd. of Teamsters, 49 CCH Lab.L.Rep. ¶ 18,847 (1964), was presented with a clause very similar to the one at bar. The clause provided as follows:

"Employer agrees that unless required so to do by law or lawful public authority it will not sell dairy products from its platform to any person from a corporation who buys said products for distribution to retail outlets in competition with route salesmen covered by this Agreement and similar agreements with other employers in this area unless such person from a corporation *observes and causes its employees to observe substantially the same conditions of employment as those observed by employer*." (Emphasis added)

In granting the petition by the Board for a preliminary injunction pending a disposition by the Board of a charge filed by a subcontractor with whom the general contractor had ceased to do business, due to this clause, the Court held that:

"2. There is and petitioner has reasonable cause to believe that: * *

(d) Respondent has engaged in unfair labor practices within the meaning of Section 8(e) of the Act. * * *." Id. at 30,996.

While this case involved more assertive conduct in implementing the clause than the case at bar, this distinction should not be determinative. Whether the employer, as a result of Union pressure, must cease doing business with another employer, or must submit to compulsory arbitration, the Union is still implementing an allegedly void and unenforcible clause in a contract. And the harm can be just as severe, and the burden on interstate commerce, alleged by the Board to exist, just as heavy even

though all the Union seeks is to arbitrate a void clause.

Finally, the Board in Truck Drivers Union, Local 413, Int'l Bhd. of Teamsters, 140 N.L.R.B. 1474 (1963), enforced as modified, Truck Drivers Union Local No. 413, International Brotherhood of Teamsters, etc., v. N. L. R. B., 334 F.2d 539 (D.C.Cir. 1964), cert. denied, 33 U.S.L. Week 3180 (Nov. 17, 1964), struck down the following clause:

"The Employer to refrain from using the services of any person who does not observe the wages, hours and conditions of employment established by labor unions having jurisdiction over the types of services performed."

In striking down the clause, the Board stated:

"The Respondents contend that the subcontracting provisions have for their purpose the preservation of jobs of employees in the contract unit. We find no merit in this argument since the cited paragraph dictates to the Employer those with whom he shall be permitted to do business rather than obliging him to refrain from contracting out work previously performed by employees in the bargaining unit." Id. at 1486.

The Court of Appeals for the District of Columbia refused to enforce this aspect of the Board's decision. In setting aside the Board's determination that this clause violates Section 8(e), the Court of Appeals distinguished two classes of clauses. The one imposes restrictions on contracting with subcontractors not signatory to Union agreements, these being secondary and within Section 8(e); the other being contracts "which merely require the subcontractors to meet the equivalent of union standards in order to protect the work standards of the employees of the contracting employer," —these being primary to the contracting employer. The clause present in the contract was, the Court felt, a require-ment of Union standards and not Union recognition.

It is arguable that the distinction sought to be drawn is in reality one of form rather than of substance. Moreover, the Court itself, in a cryptic footnote, lends weight to the tenuousness of this distinction by stating:

"The Board's processes are adequate, we take it, to insure that substantial compliance with Union standards or the equivalent will suffice under such a clause, and that the Union will not be allowed to use it as a device to limit subcontracting to union firms." Id. at 548, n. 14.

This Court is thus faced with a conflict of authority.

As a general proposition, the Court should accord the decision of a Court of Appeals, even though of another circuit, due consideration and weight. Lang v. Elm City Const. Co., 217 F.Supp. 873 (D.Conn.), aff'd, 324 F.2d 235 (2d Cir. 1963); Hardy v. Rossell, 135 F. Supp. 260 (S.D.N.Y.1955). However, this Court is not bound by a decision of the Court of Appeals of another circuit, and in a proper case can disregard it. Thompson v. Calmar Steamship Corp., 216 F.Supp. 234 (E.D.Pa.1963). Furthermore, in the cases cited, supra, there was no authority contra to the position taken by the Court of Appeals.

In the case at bar, the National Labor Relations Board, the agency entrusted with the administration of the statute, has taken a position contrary to that of the recent Court of Appeals decision.

"The Supreme Court has admonished [the courts] . . . many times to give 'great weight' to an agency's interpretation of its governing statute * * *. Such deference keeps the inexpertness of courts which must deal with the whole gamut of the law, from distorting the policy of Congress in complex areas of the economy requiring specialized skills and scrutiny." West Texas Utilities Co. v. N. L. R. B., 87

U.S.App.D.C. 179, 184 F.2d 233, 235 (1950), cert. denied, 341 U.S. 939, 71 S.Ct. 999, 95 L.Ed. 1366 (1951). See N. L. R. B. v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 692, 71 S. Ct. 943, 95 L.Ed. 1284 (1951); Circle Discount Corp. v. United States, 211 F. Supp. 743 (D.D.C.1962). This should be the rule even more so where the problem involves a contemporaneous construction of a relatively new statutory enactment. See Norwegian Nitrogen Products Co. v. United States, 288 U.S. 294, 315, 53 S.Ct. 350, 77 L.Ed. 796 (1933).

In any event, this Court need not decide whether in fact this clause violates Section 8(e); that ultimate determination has been placed with the Board subject to review by the Court of Appeals. This Court need only decide whether the Board has "reasonable cause to believe" that such is the case. McLeod For and on Behalf of N. L. R. B. v. Newspaper & Mail Deliverers' Union, 209 F.Supp. 434 (S.D.N.Y.1962).

On the basis of the foregoing, this Court is satisfied that petitioner has reasonable cause to believe that Paragraph 7 of the collective bargaining agreement violates Section 8(e) of the Act. Accordingly, a preliminary injunction will issue in accordance with the provisions of Section 10(*l*) of the Act.

The injunction petitioned for seeks to enjoin two forms of conduct by:

1) Preventing respondent from implementing Paragraph 7 of the collective bargaining agreement;

2) Preventing respondent from "entering into, maintaining, giving effect to, implementing or enforcing any other contract or agreement, express or implied, whereby Westinghouse or any other employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer or to cease doing business with any other person."

Subdivision 2 of the requested injunction is worded in the exact language of Section 8(e) of the Act. Presumably, it would enjoin respondent from doing that which it is already prohibited by statute from doing. It is therefore surplusage and unnecessary.

The only problem then is the power of this Court to enjoin respondent from "implementing or giving effect to Paragraph 7", to wit, by proceeding to arbitrate a dispute arising under that clause of the contract, this being the only means adopted by respondent to give effect to said paragraph.

Respondent sets forth the following propositions as now being settled law:

(a) An arbitration proceeding is a suit within the meaning of § 301(a) of the National Labor Relations Act, 29 U.S.C. § 185(a) (1956). United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960); Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957);

(b) The preemption doctrine of San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), or what remains of it, does not preclude submission, to a court or an arbitration board, of a controversy alleging a breach of the collective bargaining agreement, wherein the activity constituting said breach is also arguably an unfair labor practice. See, e. g., Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962);

(c) Thus, if the grievance is arbitrable within the scope of the collective bargaining agreement, the power of the arbitrator cannot be ousted and is at least concurrent with that of the Board. Therefore, this Court cannot enjoin an arbitration proceeding even though the clause itself, not merely the conduct arising thereunder, is alleged to constitute the unfair labor practice and the

Board has not merely assumed jurisdiction but is the party petitioning this Court for an injunction.

While the axioms set forth in subdivisions (a) and (b) cannot be disputed by this Court as general propositions of law, this Court finds considerable doubt as to proposition (c). Moreover, even as to (a) and (b), it is for this Court to ascertain the metes and bounds to be given to those propositions and their possible inapplicability in a given situation. See Christensen, Labor Relations Law, 1962 Annual Survey American Law, 185, 198–99.

It is obvious, due to the broad scope of the first two propositions, that they defy an easy application and that the task of applying them under a given set of circumstances is at best a precarious one. See, e. g., Carey v. Westinghouse Electric Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964), reversing, 11 N.Y.2d 452, 230 N.Y.S.2d 703, 184 N.E.2d 298 (1962).

In addition, in spite of the Supreme Court enunciations on the subject, some commentators have counseled a doctrine of judicial self-restraint in certain cases. "Where for example the Board has actually issued a complaint against an employer and a Union charging them with the maintenance of an illegal union security agreement a Court asked to enforce that clause *would be well advised* to await the Board's decision." Sovern, Section 301 and The Primary Jurisdiction of the NLRB, 76 Harv.L.Rev. 529, 571 (1963). (Emphasis added).

Indeed, the Supreme Court itself, envisioning possible future difficulties, left the door open to the application of different rules in a proper case when it prophetically stated:

"If * * * there are situations in which serious problems will arise from both the courts [or arbitrator] and the Board having jurisdiction over acts which amount to an unfair labor practice, we shall face those cases when they arise." Smith v. Evening News Ass'n,

371 U.S. 195, 197–198, 83 S.Ct. 267, 269 (1962).

While this Court must accept as settled law propositions (a) and (b) supra, the case at bar presents issues which did not confront the Court in those cases. Our case arises not under Section 301(a) of the Act, a suit to compel arbitration or to enforce an award, nor is it a suit by one of the parties to stay an arbitration, wherein the power of the Court is more limited. See Kentile, Inc. v. Local 457, United Rubber, Cork, Linoleum & Plastic Workers, etc., 228 F.Supp. 541 (E.D.N.Y.1964). It is rather a suit by the National Labor Relations Board under Section 10(*l*) of the statute to enjoin an unfair labor practice. Cf., International Union of Electrical, Radio and Machine Workers, AFL–CIO v. General Elec. Co., 332 F.2d 485 (2d Cir. 1964).

The Board is specifically empowered and directed by the statute to petition the District Court for this injunctive relief. While the general rule concerning the desirability of arbitration is entitled to some weight, surely when the Board petitions to enjoin an unfair labor practice the mere fact that this unfair labor practice involves a clause subject to arbitration should not remove this case from the broader rules of law applicable to Section 10(*l*) suits and place it totally within the realm of Section 301(a) suits which govern suits by *employer* and/or *employee*. Cf., Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 101 n. 9, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962). If Paragraph 7 is within the purview of Section 8(e) and thus an unfair labor practice, then to that extent the Court under Section 10(*l*) should grant the relief requested and enjoin the implementation of that clause whether that implementation is by arbitration or otherwise.

The issue of preemption and concurrent jurisdiction, whether it involves the courts and the Board and/or an arbitrator and the Board, arises most often where the conduct alleged to be a breach

of the collective bargaining agreement also arguably constitutes an unfair labor practice. See, e. g., Smith v. Evening News Ass'n, 371 U.S. 195, 197, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) (Alleged breach of a clause in the contract prohibiting discrimination for Union activity; also a violation of Section 8(a) (3) of the Act); Local 174, Teamsters Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) (Discharge for "cause" under the collective bargaining agreement and a possible violation of Section 8(a) (3)); Lodge No. 12, Dist. No. 37, International Association of Machinists v. Cameron Iron Works, Inc., 257 F.2d 467, 474 (5th Cir.), cert. denied, 358 U.S. 880, 79 S.Ct. 120, 3 L.Ed.2d 110 (1958). (Violation of collective bargaining agreement by refusal to reinstate strikers; also a possible violation of Section 8(a) (1) and (3) of the Act.).

In situations similar to those just cited, where there may be an overlap between conduct which constitutes a breach of an agreement and also constitutes an unfair labor practice, on the basis of the Supreme Court decisions, this Court would be loathe to interfere with an arbitration of the dispute pursuant to an arbitration clause in the contract.

However, in the case at bar we do not have the usual situation of concurrent spheres of jurisdiction. We are *not* confronted with an allegation that certain *conduct* may be an unfair labor practice, but rather that the *clause itself*, whose breach is the basis of the arbitration, as it stands is, in and of itself, an unfair labor practice under Section 8(e).

If the Board finds the clause to be violative of Section 8(e), it is unenforcible and void. If it is unenforcible and void, it should not and cannot form the foundation for any arbitration award, irrespective of the holding of the arbitrator, and the mere submission of the controversy to arbitration would compound the statutory violation. In other words, if the clause is void and unenforcible it was void and unenforcible as of the time of its insertion into the contract and, *ipso facto*, cannot be the basis of any breach of the collective bargaining agreement. Cf., Local 1545, United Brotherhood of Carpenters and Joiners of American, AFL–CIO v. Vincent, 187 F.Supp. 921 (S.D.N.Y.) aff'd, 286 F.2d 127 (2d Cir. 1960).

The Board cites Kentile, Inc. v. Local 457, United Rubber, Cork, Linoleum & Plastic Workers, etc., 228 F.Supp. 541 (E.D.N.Y.1964) for the proposition that the Court can, in a given case, stay an arbitration proceeding pending a final disposition by the Board of an unfair labor practice charge covering the same set of facts. While that case involved a situation where a trial examiner had already submitted his decision to the Board, it presented the general issue of concurrent jurisdiction in a familiar context, to wit, certain activity breaching a collective bargaining agreement and also constituting an unfair labor practice. The issue presented can be said to fall clearly within the general propositions cited supra, wherein the Supreme Court has held that the jurisdiction of the Board is concurrent with that of the arbitrator. Nevertheless, the District Court in Kentile in a suit under Section 301(a) of the Act, stayed the arbitration pending the Board's final disposition of the charge.

In this respect the case at bar is an even stronger one warranting the staying of the arbitration proceeding. For here we are presented not with a Section 301(a) suit between employer and Union, but rather a suit by the Board under Section 10(*l*), a suit wherein the Board, instead of acceding to the arbitration process, Spielberg Mfg. Co., 112 N.L.R.B. 1080 (1955); International Harvester Co., 138 N.L.R.B. 923 (1962); cf., Smith v. Evening News Ass'n, 371 U.S. 195, 198 n. 6, 83 S.Ct. 267, 269 (1962), is itself seeking to enjoin the parties from proceeding to arbitration. Cf., Interna-

tional Union of Electrical Radio and Machine Workers, AFL–CIO v. General Elec. Co., 332 F.2d 485 (2d Cir. 1964). The unfair labor practice here is not conduct which breached a clause of a contract but rather the clause itself, so that the traditional doctrines cited supra are not controlling. Moreover, a determination by the Board should of necessity preclude an award under the void clause of the contract.

Kentile is surely authority for the proposition that this Court has power to stay an arbitration proceeding pending the Board's disposition of an unfair labor practice charge where the Board's determination of necessity will bind the arbitrator. Furthermore, if the arbitration proceeds and the Board holds the clause void, the parties will not only have engaged in an "exercise in futility" but will have compounded a statutory violation.

█ When the problem is viewed in this context, this Court not only has the power to stay an arbitration proceeding but may very well have the duty to do so when the clause to be arbitrated is itself alleged to violate the statute.

On the basis of the foregoing findings of fact and conclusions of law.

Be it ordered that:

Respondent, its officers, representatives, agents, servants, employees and attorneys and all members and persons acting in concert or participation with it or them be enjoined and restrained, pending the final disposition of the matter herein pending before the Board, from maintaining, giving effect to, implementing, or enforcing its collective bargaining agreement with Westinghouse in so far as said contract provides that:

Nothing in this agreement shall be construed as preventing WINS from buying package shows or other broadcast material made exclusively for use over WINS from independent contractors providing, however, that WINS in its contract with the packager receives a representation and warranty that the performers on the package program, or other broadcast material, have been paid compensation not less than the compensation which would have been payable to said performers if WINS had produced the program or other broadcast material itself.

So ordered.