## SMITH *v.* EVENING NEWS ASSOCIATION.

No. 13.   Argued October 10, 1962.—Decided December 10, 1962.

*Thomas E. Harris* argued the cause and filed briefs for petitioner.

*Philip T. Van Zile II* argued the cause for respondent. With him on the briefs was *Clifford W. Van Blarcom.*

Mr. Justice White delivered the opinion of the Court.

Petitioner is a building maintenance employee of respondent Evening News Association, a newspaper publisher engaged in interstate commerce, and is a member of the Newspaper Guild of Detroit, a labor organization having a collective bargaining contract with respondent. Petitioner, individually and as assignee of 49 other similar employees who were also Guild members, sued respondent for breach of contract in the Circuit Court of

Wayne County, Michigan.[1] The complaint stated that in December 1955 and January 1956 other employees of respondent, belonging to another union, were on strike and respondent did not permit petitioner and his assignors to report to their regular shifts, although they were ready, able and available for work.[2] During the same period, however, employees of the editorial, advertising and business departments, not covered by collective bargaining agreements, were permitted to report for work and were paid full wages even though there was no work available. Respondent's refusal to pay full wages to petitioner and his assignors while paying the nonunion employees, the complaint asserted, violated a clause in the contract providing that "there shall be no discrimination against any employee because of his membership or activity in the Guild."

The trial court sustained respondent's motion to dismiss for want of jurisdiction on the ground that the allegations, if true, would make out an unfair labor practice under the National Labor Relations Act and hence the subject matter was within the exclusive jurisdiction of the National Labor Relations Board. The Michigan Supreme Court affirmed, 362 Mich. 350, 106 N. W. 2d 785, relying upon *San Diego Trades Council* v. *Garmon,* 359 U. S. 236, and like pre-emption cases.[3] Certiorari was granted, 369 U. S. 827, after the decisions of this Court in *Local 174, Teamsters* v. *Lucas Flour Co.,* 369 U. S. 95, and *Dowd Box Co.* v. *Courtney,* 368 U. S. 502.

---

[1] There was no grievance arbitration procedure in this contract which had to be exhausted before recourse could be had to the courts. Compare *Atkinson* v. *Sinclair Refining Co.,* 370 U. S. 238; *Drake Bakeries Inc.* v. *Local 50, American Bakery Workers,* 370 U. S. 254.

[2] A small number of these employees were permitted to do some work during the strike.

[3] *Garner* v. *Teamsters Union,* 346 U. S. 485; *Weber* v. *Anheuser-Busch,* 348 U. S. 468.

*Lucas Flour* and *Dowd Box,* as well as the later *Atkinson* v. *Sinclair Refining Co.,* 370 U. S. 238, were suits upon collective bargaining contracts brought or held to arise under § 301 of the Labor Management Relations Act [4] and in these cases the jurisdiction of the courts was sustained although it was seriously urged that the conduct involved was arguably protected or prohibited by the National Labor Relations Act and therefore within the exclusive jurisdiction of the National Labor Relations Board. In *Lucas Flour* as well as in *Atkinson* the Court expressly refused to apply the pre-emption doctrine of the *Garmon* case; and we likewise reject that doctrine here where the alleged conduct of the employer, not only arguably, but concededly, is an unfair labor practice within the jurisdiction of the National Labor Relations Board.[5] The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301. If, as respondent strongly urges, there are situations in which serious problems will arise from both the courts and the Board having jurisdiction over acts

---

[4] "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." Labor Management Relations Act, § 301 (a), 29 U. S. C. § 185 (a).

[5] "It shall be an unfair labor practice for an employer . . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ." National Labor Relations Act, § 8 (a) (3), 29 U. S. C. § 158 (a) (3). An unfair labor practice charge could have been filed under § 10, but that remedy was not pursued and the present proceeding was commenced after the six-month limitation period prescribed in § 10 (b) had expired.

which amount to an unfair labor practice, we shall face those cases when they arise. This is not one of them, in our view, and the National Labor Relations Board is in accord.[6]

We are left with respondent's claim that the predicate for escaping the *Garmon* rule is not present here because this action by an employee to collect wages in the form of damages is not among those "suits for violation of contracts between an employer and a labor organization . . . ," as provided in § 301. There is support for respondent's position in decisions of the Courts of Appeals,[7] and in *Association of Westinghouse Salaried Employees* v. *Westinghouse Corp.*, 348 U. S. 437, a majority of the Court in three separate opinions concluded that § 301 did not give the federal courts jurisdiction over a suit brought by a union to enforce employee rights which were variously characterized as "peculiar in the individual benefit which is their subject matter," "uniquely personal" and arising "from separate hiring contracts between the employer and each employee." *Id.*, at 460, 461, 464.

---

[6] The view of the National Labor Relations Board, made known to this Court in an *amicus curiae* brief filed by the Solicitor General, is that ousting the courts of jurisdiction under § 301 in this case would not only fail to promote, but would actually obstruct, the purposes of the Labor Management Relations Act.

The Board has, on prior occasions, declined to exercise its jurisdiction to deal with unfair labor practices in circumstances where, in its judgment, federal labor policy would best be served by leaving the parties to other processes of the law. See, *e. g., Consolidated Aircraft Corp.*, 47 N. L. R. B. 694; *Spielberg Mfg. Co.*, 112 N. L. R. B. 1080.

[7] *E. g., Local Lodge 2040, I. A. M.*, v. *Servel, Inc.*, 268 F. 2d 692 (C. A. 7th Cir.); *Copra* v. *Suro*, 236 F. 2d 107 (C. A. 1st Cir.); *United Protective Workers* v. *Ford Motor Co.*, 194 F. 2d 997 (C. A. 7th Cir.). See also *Dimeco* v. *Fisher*, 185 F. Supp. 213 (D. N. J.) and cases cited therein.

However, subsequent decisions here have removed the underpinnings of *Westinghouse* and its holding is no longer authoritative as a precedent. Three of the Justices in that case were driven to their conclusion because in their view § 301 was procedural only, not substantive, and therefore grave constitutional questions would be raised if § 301 was held to extend to the controversy there involved.[8] However, the same three Justices observed that if, contrary to their belief, "Congress has itself defined the law or authorized the federal courts to fashion the judicial rules governing this question, it would be self-defeating to limit the scope of the power of the federal courts to less than is necessary to accomplish this congressional aim." *Id.,* at 442. *Textile Workers* v. *Lincoln Mills,* 353 U. S. 448, of course, has long since settled that § 301 has substantive content and that Congress has directed the courts to formulate and apply federal law to suits for violation of collective bargaining contracts. There is no constitutional difficulty and § 301 is not to be given a narrow reading. *Id.,* at 456, 457. Section 301 has been applied to suits to compel arbitration of such individual grievances as rates of pay, hours of work and wrongful discharge, *Textile Workers* v. *Lincoln Mills, supra; General Electric Co.* v. *Local 205, UEW,* 353 U. S. 547; to obtain specific enforcement of an arbitrator's award ordering reinstatement and back pay to individual employees, *United Steelworkers* v. *Enterprise Wheel & Car Corp.,* 363 U. S. 593; to recover wage increases in a contest over the validity of the collective bargaining contract, *Dowd Box Co.* v. *Courtney, supra;* and to suits against individual union members for violation of a

---

[8] Two other Justices, in a separate opinion, concluded that under § 301 a union as a party plaintiff may not enforce the wage claims of individual employees.

no-strike clause contained in a collective bargaining agreement. *Atkinson* v. *Sinclair Refining Co., supra.*

The concept that all suits to vindicate individual employee rights arising from a collective bargaining contract should be excluded from the coverage of § 301 has thus not survived. The rights of individual employees concerning rates of pay and conditions of employment are a major focus of the negotiation and administration of collective bargaining contracts. Individual claims lie at the heart of the grievance and arbitration machinery, are to a large degree inevitably intertwined with union interests and many times precipitate grave questions concerning the interpretation and enforceability of the collective bargaining contract on which they are based. To exclude these claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law. This we are unwilling to do.

The same considerations foreclose respondent's reading of § 301 to exclude all suits brought by employees instead of unions. The word "between," it suggests, refers to "suits," not "contracts," and therefore only suits between unions and employers are within the purview of § 301. According to this view, suits by employees for breach of a collective bargaining contract would not arise under § 301 and would be governed by state law, if not pre-empted by *Garmon,* as this one would be, whereas a suit by a union for the same breach of the same contract would be a § 301 suit ruled by federal law. Neither the language and structure of § 301 nor its legislative history requires or persuasively supports this restrictive interpretation, which would frustrate rather than serve the congressional policy expressed in that section. "The possibility that individual contract terms might have different meanings

under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Local 174, Teamsters v. Lucas Flour Co., supra,* at 103.

We conclude that petitioner's action arises under § 301 and is not pre-empted under the *Garmon* rule.[9]  The judgment of the Supreme Court of Michigan is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACK, dissenting.

I would affirm the Michigan Supreme Court's holding that Michigan courts are without jurisdiction to entertain suits by employees against their employers for damages measured by "back pay" based on discrimination, which discrimination § 8 (a) of the National Labor Relations Act makes an unfair labor practice and which § 10 (b) and (c) subject to the jurisdiction of the Labor Board with power after hearings to award "back pay."  It is true that there have been expressions in recent cases which indicate that a suit for the violation of a collective bargaining contract may be brought in a state or federal court even though the conduct objected to was also arguably an unfair labor practice within the Labor Board's jurisdiction.[1]  It seems clear to me that these expressions of

[9] The only part of the collective bargaining contract set out in this record is the no-discrimination clause.  Respondent does not argue here and we need not consider the question of federal law of whether petitioner, under this contract, has standing to sue for breach of the no-discrimination clause nor do we deal with the standing of other employees to sue upon other clauses in other contracts.

[1] *Atkinson* v. *Sinclair Rfg. Co.,* 370 U. S. 238, 245, n. 5 (1962); *Local 174, Teamsters Union* v. *Lucas Flour Co.,* 369 U. S. 95, 101, n. 9 (1962); *Dowd Box Co.* v. *Courtney,* 368 U. S. 502, 513 (1962).

opinion were not necessary to the decisions in those cases [2] and that neither these prior decisions nor § 301 of the Labor Management Relations Act requires us to hold that either employers or unions can be made to defend themselves against governmental regulation and sanctions of the same type for the same conduct by both courts and the Labor Board. Such duplication of governmental supervision over industrial relationships is bound to create the same undesirable confusion, conflicts, and burdensome proceedings that the National Labor Relations Act was designed to prevent, as we have interpreted that Act in prior cases like *San Diego Building Trades Council* v. *Garmon,* 359 U. S. 236 (1959).

One example is enough to show how Congress' policy of confining controversies over unfair labor practices to the Labor Board might well be frustrated by permitting unfair labor practice claimants to choose whether they will seek relief in the courts or before the Board. Section 10 (b) of the Act provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board . . . ." In contrast, the statute of limitations in Michigan governing breach of contract suits like this is six years.[3] The Court's holding thus opens up a way to

---

[2] *Atkinson* v. *Sinclair Rfg. Co., supra,* note 1, involved a strike by union members over pay claims, in violation of an agreement to arbitrate grievances. *Local 174, Teamsters Union* v. *Lucas Flour Co., supra,* note 1, concerned a strike by the union over the discharge of an employee, in violation of an agreement to arbitrate such disputes. *Dowd Box Co.* v. *Courtney, supra,* note 1, was an action by union officers against a company for failure to put into effect pay increases and vacation benefits provided in a collective bargaining agreement. In my view, none of the activities in any of these cases were even arguably unfair labor practices subject to the Labor Board's jurisdiction, and the Court did not suggest that they were.

[3] Mich. Comp. Laws, 1948, § 609.13.

defeat the congressional plan, adopted over vigorous minority objection, to expedite industrial peace by requiring that both the complaining party and the Board act promptly in the initiation of unfair labor practice proceedings.[4]   Instead, by permitting suits like this one to be filed, it is now not only possible but highly probable that unfair labor practice disputes will hang on like festering sores that grow worse and worse with the years.[5]   Of course this Court could later, by another major statutory surgical operation, apply the six-months Labor Board statute of limitations to actions for breach of collective bargaining contracts under § 301.   But if such drastic changes are to be wrought in the Act that Congress passed, it seems important to me that this Court should wait for Congress to perform that operation.

There is another reason why I cannot agree with the Court's disposition of this case.   In the last note on the last page of its opinion, the Court says:

> "The only part of the collective bargaining contract set out in this record is the no-discrimination clause. Respondent does not argue here and we need not consider the question of federal law of whether petitioner, under this contract, has standing to sue for breach of the no-discrimination clause nor do we deal with the standing of other employees to sue upon other clauses in other contracts."

---

[4] Compare H. R. Rep. No. 245, 80th Cong., 1st Sess. 40 (1947) (majority view), with *id.*, at 90 (minority view).

[5] The Government suggests that these years be further extended by requiring that, when cases are brought in a court, questions within the Labor Board's competence shall be referred to the Board. Dividing into two what should be a single proceeding will result in a shuttling operation which prior experience shows might not be settled for a decade.   See, *e. g.*, the protracted litigation which was finally concluded in *El Dorado Oil Works* v. *United States*, 328 U. S. 12 (1946).

Unless my reading of this note is wrong, the Court purports to reserve the question of whether an employee who has suffered the kind of damages here alleged arising from breach of a collective bargaining agreement can file a lawsuit for himself under § 301. Earlier in its opinion the Court decides that a claim for individual wages or back pay· is within the subject-matter jurisdiction of courts under § 301, that is, that such a claim is of the type that the courts are empowered to determine. The Court then rejects respondent's argument that an individual employee can never under any circumstances bring a § 301 suit. But it seems to me that the Court studiously refrains from saying when, for what kinds of breach, or under what circumstances an individual employee can bring a § 301 action and when he must step aside for the union to prosecute his claim. Nor does the Court decide whether the suit brought in this case is one of the types which an individual can bring. This puzzles me. This Court usually refrains from deciding important questions of federal law such as are involved in this case without first satisfying itself that the party raising those questions is entitled (has standing) to prosecute the case. It seems to me to be at least a slight deviation from the Court's normal practice to determine the law that would be applicable in a particular lawsuit while leaving open the question of whether such a lawsuit has even been brought in the particular case the court is deciding. This Court has not heretofore thought itself authorized to render advisory opinions. Moreover, I am wholly unable to agree that the right of these individuals to bring this lawsuit under § 301 was not argued here.

Finally, since the Court is deciding that this type of action can be brought to vindicate workers' rights, I think it should also decide clearly and unequivocally whether an employee injured by the discrimination of either his employer or his union can file and prosecute his

own lawsuit in his own way. I cannot believe that Congress intended by the National Labor Relations Act either as originally passed or as amended by § 301 to take away rights to sue which individuals have freely exercised in this country at least since the concept of due process of law became recognized as a guiding principle in our jurisprudence. And surely the Labor Act was not intended to relegate workers with lawsuits to the status of wards either of companies or of unions.