George W. LONG, d/b/a George W. Long Painting & Decorating Company, Needles, California, Plaintiff,

v.

George B. EMERY, Jr., et al., Defendants.

No. KC-1925.

United States District Court
D. Kansas.
April 7, 1964.

John A. Biersmith, Kansas City, Mo., Cyrus W. Long, Kansas City, Kan., for plaintiff.

Clifford N. Jarrett, Kansas City, Mo., Payne, Jones, Anderson & Payne, Overland Park, Kan., McCullough, Parker & Wareheim, Murrell, Scott & Quinlan, Topeka, Kan., for defendants.

TEMPLAR, District Judge.

The plaintiff, George W. Long, doing business as George W. Long Painting and Decorating Company, Needles, California, brought this action against all the members of the McKee-Emery Group, which was a joint venture formed for the construction of government houses at Fort Riley, Kansas, the General Insurance Company of America, the surety for the McKee-Emery Group, the Waggener Paint Company (a supplier of materials for the construction project at Fort Riley, Kansas), and Painters Local Union No. 854 and its business agent, Robert Eugene Peterson. The plaintiff directs Counts 1 and 2 of his complaint against the McKee-Emery Group, and Counts 3 and 4 against the labor union and its business agent. The Union and its agent has moved to dismiss the proceedings against them and this motion to dismiss is the only matter in these proceedings presently before the Court.

Count 3 of the plaintiff's complaint alleges in substance that Painters Local Union No. 854 is a labor organization operating in the State of Kansas for the purpose of dealing with employers of painters concerning grievances, labor disputes, wages and working conditions, and that Robert Eugene Peterson is the present occupant of the office of business agent for the said Union. Plaintiff further alleges that some time prior to July 23, 1963, all of the defendants, i.e. McKee-Emery Group, the Union, the Waggener Paint Company and Robert Eugene Peterson, combined and conspired among themselves for their mutual benefit and gain to jointly and severally interfere and cause others to interfere with the plaintiff's contract with the McKee-

Emery Group; to maliciously injure the trade and business of the plaintiff; to artificially create an apparent but fictional justification for the renunciation of plaintiff's contract with the McKee-Emery Group and to breach the valid existing contract between plaintiff and the McKee-Emery Group.

Plaintiff further alleges that in furtherance of such wrongful agreement the various defendants hindered the plaintiff in the performance of his work and caused the work of the plaintiff to be deliberately marred, defaced, mutilated, tainted, smirched and blemished and to be performed in a faulty and unworkmanlike manner; hindered plaintiff in his efforts to obtain qualified workmen for the performance of the contract and refused to make workmen available to the plaintiff despite his repeated request for them. He further alleges that periodic progress payments were withheld from him in an attempt to impair his financial standing and that on two occasions, August 8, 1962, and again on August 22, 1962, by force of threats of bodily harm and wrongful imposition of fines and penalties, the defendants induced and compelled plaintiff's employees to refrain from their duties with him and that during all of the period there was no labor dispute or controversy over wages or conditions of employment.

Plaintiff alleges further that on August 27, 1962, the defendants wrongfully seized and converted materials belonging to the plaintiff. He further alleges that on or about August 25, 1962, his contract was wrongfully and unilaterally renounced, cancelled and rescinded by defendants. As a direct and proximate result of these wrongs plaintiff alleges that he was damaged in his trade or business in an amount of Three Hundred Thousand Dollars.

Count 4 of plaintiff's complaint incorporates by reference all of the allegations of Count 3 and states further that the conduct alleged in Count 3 was maliciously, knowingly, wantonly and recklessly done in disregard of his rights and plaintiff therefore prays for One Hundred Thousand Dollars as exemplary and punitive damages.

This summarization of Counts 3 and 4 set out herein was taken from the movant's brief. Also movants, in their brief, in very succinct terms, state the theory of their motion. They state:

"The theory of the motion is that the conduct of which plaintiff complains is either protected or prohibited by Sections 7 or 8 of the Labor Management Relations Act, as amended, * * *, that the plaintiff is engaged in interstate commerce within the meaning of the Act and within the jurisdictional standards of the National Labor Relations Board. Therefore the conduct for which plaintiff seeks damages is preempted and within the exclusive jurisdiction of the National Labor Relations Board and this Court is without jurisdiction over the subject matter."

This Court is unable to see any preemption problem under the pleadings and deposition which are before it at this time. But let us consider the position taken by the movants and assume that the National Labor Relations Act is applicable. Under such circumstances, the question then arises as to whether or not this action may be prosecuted under Section 303 [29 U.S.C. § 187(b)] despite the applicability of the National Labor Relations Act because the allegations would constitute an unfair labor practice. [29 U.S.C. § 158(b) (4)].

Section 303 as amended, now provides as follows:

"(a) It shall be unlawful, for the purposes of this section only, in an industry or activity affecting commerce, for any labor organization to engage in any activity or conduct defined as an unfair labor practice in section 158(b) (4) of this title."

Section 158(b) (4), referred to, reads:

"(b) It shall be an unfair labor practice for a labor organization or its agents—

*  *  *  *  *  *

to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—

"(A) forcing or requiring any employer or self-employed person to join any labor or employer organization or to enter into any agreement which is prohibited by subsection (e) of this section;

"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 159 of this title:

"Provided, that nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing;

"(C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 159 of this title;

"(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or in a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work:

"Provided, That nothing contained in this subsection shall be construed to make unlawful a refusal by any person to enter upon the premises of any employer (other than his own employer), if the employees of such employer are engaged in a strike ratified or approved by a representative of such employees whom such employer is required to recognize under this subchapter: Provided further, That for the purposes of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers and members of a labor organization, that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer, as long as such publicity does not have an effect of inducing any individual employed by any person other than the primary employer in the course of his employment to refuse to pick up, deliver, or transport any goods, or not to perform any services, at the establishment of the employer engaged in such distribution."

Then the statute 29 U.S.C. § 187(b) provides:

"Whoever shall be injured in his business or property by reason of [or] any violation of subsection (a) of this section may sue therefor in any district court of the United States subject to the limitations and provisions of section 185 of this title without respect to the amount in controversy, or in any other court having jurisdiction of the parties,

and shall recover the damages by him sustained and the cost of the suit."

[redacted] The above wording is clear and unambiguous; it says in plain terms that if a person sustains damage in his business or to his property by reason of any violation of 29 U.S.C. § 187(a) that that person may sue therefor in the United States District Court.

Further, the law as set out in the case of Smith v. Evening News Assn., 371 U.S. 195, 196, 83 S.Ct. 267, 9 L.Ed.2d 246, gives added force to the plaintiff's theory that this Court and the National Labor Relations Board may both have jurisdiction of the case when there is an unfair labor practice which would also constitute a cause of action. The case says:

> "The trial court sustained respondent's motion to dismiss for want of jurisdiction on the ground that the allegations, if true, would make out an unfair labor practice under the National Labor Relations Act and hence the subject matter was within the exclusive jurisdiction of the National Labor Relations Board. The Michigan Supreme Court affirmed * * * relying upon San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775], and like pre-emption cases. Certiorari was granted, 369 U.S. 827 [82 S.Ct. 843, 7 L.Ed.2d 793], after the decisions of this Court in Local 174, Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95 [82 S.Ct. 571, 7 L.Ed.2d 593], and Charles Dowd Box Co. v. Courtney, 368 U.S. 502 [82 S.Ct. 519, 7 L.Ed. 2d 483].
>
> "Lucas Flour and Dowd Box, as well as the later Atkinson v. Sinclair Refining Co., 370 U.S. 238 [82 S.Ct. 1318, 8 L.Ed.2d 462], were suits upon collective bargaining contracts brought or held to arise under § 301 of the Labor Management Relations Act and in these cases the jurisdiction of the courts was sustained although it was seriously urged that the conduct involved was arguably protected or prohibited by the National Labor Relations Act and therefore within the exclusive jurisdiction of the National Labor Relations Board. In Lucas Flour as well as in Atkinson the Court expressly refused to apply the pre-emption doctrine of the Garmon case; and we likewise reject that doctrine here where the alleged conduct of the employer, not only arguably, but concededly, is an unfair labor practice within the jurisdiction of the National Labor Relations Board. *The authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive* and does not destroy the jurisdiction of the courts in suits under § 301. If, as respondent strongly urges, there are situations in which serious problems will arise from both the courts and the Board having jurisdiction over acts which amount to an unfair labor practice, we shall face those cases when they arise. This is not one of them, in our view, and the National Labor Relations Board is in accord." (Emphasis added.)

[redacted] Clearly, this Court has jurisdiction to entertain a claim for damages under Section 303 for secondary boycott even though such claim was joined with a non-federal common-law action for a wrongful interference with plaintiff's business. White Oak Coal Co. v. United Mine Workers of America, C.A.Tenn. 1963, 318 F.2d 591, and Flame Coal Co. v. United Mine Workers of America, C.A.Ky.1962, 303 F.2d 39, cert. den. 83 S.Ct. 186, 371 U.S. 891, 9 L.Ed.2d 125.)

This Court find that because this is a case for damages arising from an unfair labor practice, i. e., a secondary boycott, that Section 303 (29 U.S.C. § 187), by its literal terms and the controlling case law, compels a finding that the motion to dismiss be overruled.

Counsel for the plaintiff will prepare and submit the appropriate order.