**OREGON INDEPENDENT GROCERS ASSOCIATION, INC., a corporation, Plaintiff,**

**v.**

**AMALGAMATED MEAT CUTTERS AND BUTCHER WORKMEN, AFL–CIO, LOCAL NO. 324, a labor organization, and John R. Moore, Defendants.**

Civ. No. 64–178.

United States District Court
D. Oregon.

Oct. 29, 1964.

Gunther F. Krause, Krause, Lindsay & Nahstoll, Portland, Or., for plaintiff.

Robert L. Ackerman, Springfield, Or., for defendants.

KILKENNY, District Judge.

This is an action under Sections 301 and 302 of the Labor Management Relations Act, 29 U.S.C. §§ 185 and 186. Defendants challenge the jurisdiction of the court under either section.

Plaintiff is an Oregon corporation acting for and in behalf of certain employers' committees, the employers of meat cutters and butcher workmen. Local No. 324 is a labor organization composed of persons working as meat cutters and butcher workmen in Oregon, and elsewhere, it being chartered for the purpose of organizing meat cutters and butcher workmen. One John R. Moore is the secretary-treasurer and representative of said local.

During the years 1962 and 1963, plaintiff acting through said meat dealers' committees, entered into contracts with said union, covering wages, hours and working conditions of the meat cutters and butcher workmen employed by plaintiff's members. In the agreement, plaintiff agreed, among other things, that the employers represented by plaintiff would pay an additional $4.00 per week, effective January 1, 1964, either for the purpose of increasing the rate of pay to the employees by 10 cents per hour or by contributing 10 cents per straight-time hour, not to exceed 80 cents per day, and $4.00 per week up to a maximum of $17.-30 per month into the Oregon Federation of Butchers Pension Fund. Grievances were to be settled by arbitration, the contract prohibiting any walk-out or other work stoppage of whatever nature throughout the term of the agreement.

The threshold question is whether a certain instrument [1] attached

1. "Mr. John Moore, Secretary
   Meat Cutters Union, Local No. 324
   Eugene, Oregon.
   &ast; &ast; &ast; &ast; &ast;
   We wish to call to your attention that under the Section designated "Exhibit A" of the contract, provision is made for the following:
   "Effective January 1, 1964, the Employer agrees to pay an additional four dollars ($4.00) per week increase which the Union membership shall have.
   "Option No. 1: To add ten cents (10¢) to the contract hourly rates; or
   "Option No. 2: To divert the increase into the Oregon Federation of Butchers Pension Fund, to be paid by the Employer on behalf of each employee covered by the Agreement, 10¢ per straight-

time hour for hours worked, not to exceed 80¢ per day $4.00 per week up to a maximum of $17.30 per month. (Paid vacation and paid holidays shall be considered as time worked.) Details of Pension Plan to be incorporated into an addendum.
   &ast; &ast; &ast; &ast; &ast;
   "It is agreed and understood that the choice of the two above options shall be decided by the Union membership in accordance with the Union's regular voting procedure by secret ballot of all employees after October 1, 1963. Employers to be notified prior to December 1, 1963, of Union membership decision."
   "We wish to inform you that the following procedure must be followed by your Union in the exercise of its op-

to each of the collective bargaining agreements became part of and was incorporated in such agreement. Important provisions of this instrument are set forth in the footnote.

An issue of fact is presented on whether the instrument was intended by the parties to become a part of the contract, or was intended merely as a request to the secretary that he would use his best efforts to have the governing body of the union incorporate those provisions into the contract. While the instrument is referred to as a "formal *request*," I must keep in mind that it was not drafted by an attorney. Furthermore, this particular language when construed with and read in the light of the other language of the instrument, and the evidence adduced at the time of the trial, can lead to but one intelligent finding; i. e. that the parties intended the instrument to become part of the contract and binding on all if, and when, the same was accepted by the union. At least it constituted an offer on the part of plaintiff. Crystal clear is the fact that plaintiff, and those it represented, were not satisfied with, and would not accept, the provisions in the original contract with reference to the subjects covered in the attached instrument. That an offer must be accepted in its precise terms is settled beyond dispute. Title Insurance & Guaranty Co. v. Hart, 160 F.2d 961 (9th Cir. 1947); Machine Tool & Equip. Corp. v. Reconstruction Finance Corp., 131 F.2d 547 (9th Cir. 1942). The acceptance may be made by express words or by conduct. General Electric Co. v. Porter, 208 F.2d 805 (9th Cir. 1954).

My first impression, on which I expressed myself from the bench, was that defendant Union by its acts in going forward with an election, had placed itself in the position of accepting the additional requirements and conditions proposed by plaintiff. On taking another look at the evidence before me and viewing defendants' actions on the election in the light of what there occurred, I am forced to the conclusion that the Union never accepted the attached proposals. The Union proceeded as if no such proposals were ever made, and, in doing so, presented for acceptance by its members an alleged collective bargaining agreement which never rose to the dignity of a contract. There being no collective bargaining agreement on which to vote, the election was void *ab initio*.

I feel that my jurisdiction is limited to my present findings and that I have no power, on the facts of this case, to go forward and provide injunctive relief, or award damages, as suggested by plaintiff. It is my belief that these limited findings and conclusions, on the construction and validity of the alleged collective bargaining agreement, fall within the ambit of jurisdiction supplied by Section 301 of the L.M.R.A., 29 U.S.C. § 185. Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962);

tion to require the employers to make contributions to the Oregon Federation of Butchers Pension Trust:

1— Every employee who is a member of your Union must be given the opportunity to vote his or her preference as to the choice of acceptance of:

(a) Cash increase of 10¢ per hour

or

(b) Payment of 10¢ per hour into the Oregon Federation of Butchers Pension Trust by the employer.

2— At least 30 days written notice must be given to all Union members announcing the date of election.

3— Such voting of the two options must be made by secret ballot.

\*    \*    \*    \*    \*

5— In the event your Union membership exercises its option for a employer pension contribution to the Oregon Federation of Butchers Pension Trust, the Oregon Retailer Employers Committee must be granted representation on the administration of such Pension Trust before the date of January 1, 1964 at which time payments by the employers would commence.

\*    \*    \*    \*    \*

This formal request as outlined above is submitted to you as an officer of the Union in order that our employers will receive tax credit for the amount of employer contributions to the Oregon Federation of Butchers Pension Trust under the provisions of the United States Internal Revenue Code."

Sheet Metal Con. Ass'n of San Francisco v. Sheet Metal Workers, 248 F.2d 307 (9th Cir. 1957).

I leave the parties where they were when defendants failed to accept the counter proposals of plaintiff. Plaintiff's counsel shall prepare an appropriate judgment in conformity herewith. Neither party shall recover costs.