**SHEET METAL WORKERS' INTERNATIONAL UNION, AFL–CIO, LOCAL UNION 17, Plaintiff,**

v.

**AETNA STEEL PRODUCTS CORPORATION, J. W. Bateson Co., Inc., and United Brotherhood of Carpenters and Joiners of America, AFL–CIO, Local Union No. 33, Defendants.**

**Civ. A. No. 65–655.**

United States District Court
D. Massachusetts.

Oct. 14, 1965.

Joseph F. Feeney, Boston, Mass., and Donald W. Fisher, Toledo, Ohio, Feeney & Malone, Boston, Mass., for plaintiff.

Oswald Vischi, of Raphael, Searles & Vischi, New York City, for defendants Aetna Steel and Bateson.

Harold B. Roitman, Boston, Mass., for United Brotherhood of Carpenters.

CAFFREY, District Judge.

This is a suit for declaratory and other relief, brought under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the Declaratory Judgments Act, 28 U.S.C. § 2201 et seq., in which the plaintiff asks the Court to vacate an arbitration award. After a hearing on plaintiff's motion for a preliminary injunction, at which the matter was argued by counsel for all parties, it appears that the following facts are undisputed:

1. Defendant J. W. Bateson Co., Inc. is a corporation duly organized under the laws of the State of Texas and having a usual place of business in Massachusetts, where it is engaged in industry affecting commerce within the meaning of 29 U.S.C. § 152(7), as amended.

2. Defendant Aetna Steel Products Corporation is a corporation duly organized under the laws of the State of New York and having a usual place of business in Massachusetts, where it also is engaged in industry affecting commerce within the meaning of 29 U.S.C. § 152(7), as amended.

3. Defendant United Brotherhood of Carpenters and Joiners of America, AFL–CIO, Local Union No. 33, is a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. § 152(5).

4. Plaintiff Sheet Metal Workers International Union, AFL–CIO, Local Union No. 17, is a labor organization representing employees in an industry affecting commerce within the meaning of 29 U.S.C. § 152(5).

5. All of the parties in this case are affiliated with organizations that adopted and signed an agreement witnessed by President Johnson at the White House on February 2, 1965. This agreement is entitled "Plan for National Joint Board for Settlement of Jurisdictional Disputes," and it provides for arbitration of disputes over work assignments in the construction industry.

6. Pursuant to Article IV of the Plan, the Local Board for the Adjustment of Jurisdictional Disputes for the Construction Industry of the Metropolitan District (Boston Board) is empowered to issue decisions resolving jurisdictional disputes on jobs or projects in the Boston area. These decisions are subject to review by an Appeals Board established under Article II, Section 2, of the Plan. The duties and powers of the Appeals Board are set out as follows in Article II, Section 5:

"The Appeals Board is empowered to review and decide any appeal from a decision or ruling of * * * a local Board recognized under Article IV and such decision of the Appeals Board shall be final. The jurisdiction of the Appeals Board shall be discretionary and it is authorized, subject to the approval of the Joint Negotiating Committee, to prescribe rules as to the types of cases which it will accept for review. * * * The Appeals Board shall have the authority, subject to the approval of the Joint Negotiating Committee, to establish such procedural regulations as may be required for the effective administration of this appeals procedure."

Plaintiff asks the Court to declare null and void a decision of this Appeals Board rendered on August 12, 1965.

7. The events leading up to the commencement of this action are undisputed, though the parties differ in the interpretation to be placed on them. Bateson, which holds the general contract for construction of the John Fitzgerald Kennedy Federal Office Building in Boston, awarded to Aetna a subcontract to furnish labor, materials and equipment for certain work on the job. Aetna made a written assignment to Carpenters of the installation of all items included in the subcontract on February 17, 1965. On April 21, 1965 the Sheet Metal Workers

filed a protest of Aetna's work assignment with the Boston Board. After notice to all parties the Boston Board held a hearing on Tuesday, April 27, 1965 which was attended by all parties except the Carpenters. On the same day the Board issued a decision awarding a certain portion of the work to the Sheet Metal Workers.

8. By telegram dated May 4, 1965 Carpenters appealed the decision to the Appeals Board. The Appeals Board, however, rejected the appeal as untimely under its procedural regulations, which provided that any request to consider an appeal must be filed with the Appeals Board no later than two working days after the date of the decision.

9. Thereafter, a dispute arose over Aetna's reassignment of the work on its subcontract. Contending that Aetna had not given the Sheet Metal Workers all the work awarded to them by the Boston Board decision, the Sheet Metal Workers went on strike on July 15, 1965. Five days later, while the strike was still in progress, plaintiff's business manager, Joseph Connelly, accompanied by representatives of Aetna and Bateson, appeared before the Boston Board and verbally requested a clarification of the April 27th decision. On the same day, July 20, after meeting in executive session, the Boston Board issued a decision stating, "All of the parties in interest be directed to comply with the April 27, 1965 decision of the Board." The Carpenters were not notified of this hearing and no representative appeared for them.

10. Under the procedural regulations of the Appeals Board in effect at the time, an appeal could be filed from "a job decision or a decision on a request for reconsideration, clarification or a decision following an oral hearing." Aetna filed an appeal from the July 20th decision of the Boston Board by telegram on July 22, 1965, requesting that the Appeals Board clarify the April 27, 1965 decision. Carpenters joined in this appeal by telegram dated July 26, 1965 and, in addition, requested that "this entire matter be reviewed by the Appeals Board for the purpose of eliminating problems and confusion created by the Boston Board and so that work may proceed without further interruption."

11. Meanwhile, the strike spread as other unions stopped work in support of the Sheet Metal Workers. Picket lines were established. The National Labor Relations Board also became involved, and contacted the Appeals Board urging resolution of the dispute in the industry. The work stoppage finally ended on July 27, 1965 when Bateson took over the work of the subcontractor and entered into an agreement with the Sheet Metal Workers. This agreement by its terms was effective only until "such time as a recognized court, the * * * (Boston Board), or the national Appeals Board reverses our order."

12. Against this background, after a hearing attended by all parties, the Appeals Board handed down the August 12, 1965 decision which is challenged here. In that decision, after stating that it had neither entertained an appeal from the April 27, 1965 decision of the Boston Board nor sought simply to interpret that decision, the Appeals Board noted that some definitive action was long overdue and unanimously made a determination of how work should henceforth proceed on the project. Under this determination the Sheet Metal Workers lost some of the items of work that had been awarded to them by the April 27th decision and which they had been performing under the July 27, 1965 agreement with Bateson.

13. Although no procedural provision for reconsideration of an Appeals Board decision was contained in its procedural regulations, the Appeals Board held a hearing on a protest by the Sheet Metal Workers who claimed that the Appeals Board had no jurisdiction over the question of the right to install items of work covered by the Boston Board decision. On August 31, 1965 the Appeals Board handed down a seven-page decision which contained a detailed summary of events leading up to its August 12th decision. After reviewing the objections of the

Sheet Metal Workers and noting the provisions of the plan upon which it apparently relied for its power to make the August 12th decision, the Appeals Board concluded that it was "anxious to have resolved by the Joint Negotiating Committee any question of its own authority, particularly during the formative period of its work." "Accordingly," the Board continued, "the Appeals Board requests that the Joint Negotiating Committee review the type of circumstances involved in the present situation and determine whether or not the Appeals Board may consider an appeal once having declined to consider an appeal, in the face of subsequent developments of the sort outlined in the Factual Background."

14. Without waiting for the Joint Negotiating Committee to hand down a decision (which still has not been done as far as this record indicates), Sheet Metal Workers filed the instant complaint on September 10, 1965 seeking declaratory relief as to (1) the validity of the Appeals Board decision of August 12th, (2) the validity of the Boston Board decision of April 27th, and (3) the validity and viability of the July 27th agreement between plaintiff and Bateson; money damages; and permanent injunctive relief against Aetna, Bateson, and Carpenters.

■■ The suit is within the jurisdiction of this court under Section 301 of the Act, 29 U.S.C. § 185. Defendants' contention, that since this dispute involves a work assignment it is within the exclusive jurisdiction of the National Labor Relations Board, is without merit. The Supreme Court's decision in Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964) established that this type of labor dispute is a proper subject for arbitration. Here the parties have entered into an agreement for the specific purpose of providing for such arbitration. Authority to compel arbitration (Carey v. Westinghouse, supra) carries with it authority to enforce or vacate an award by the arbitrator. A. L. Kornman Co. v. Amalgamated Clothing Workers, 264 F.2d 733

(6th Cir. 1959), cert. denied 361 U.S. 819, 80 S.Ct. 62, 4 L.Ed.2d 64 (1959). And the possibility of conflict is no barrier to resort to a tribunal other than the Board. Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962).

■ Defendants, in moving to dismiss the complaint, argue that it is premature since plaintiff has not exhausted its contractual remedies. More specificially, they contend that until the Joint Negotiating Committee takes some action there is no way of telling whether the plaintiff is entitled to relief from the court because the Committee may well grant plaintiff the relief it now requests. On the other hand, plaintiff argues that the Joint Negotiating Committee has no power to reverse Appeals Board decisions; that its approval or disapproval of Board rules only operates *in futuro;* that only the Appeals Board has access to the Committee; and that therefore plaintiff had exhausted its remedies under the plan and its resort to the court was proper.

Plaintiff's argument on prematurity points up another issue present in this case which, though intertwined with the question of prematurity, raises not only the further question of the propriety of court intervention in the dispute at *this* time but, also, a question of the propriety of court intervention in the dispute at *any* time. That issue is whether the parties have entrusted by contractual agreement the subject matter of this complaint to someone other than the court and, if so, whether the court will give effect to such an entrustment.

Plaintiff's main contention on the merits is that the August 12, 1965 decision of the Appeals Board is null and void because the Board exceeded its jurisdiction under the Plan. There can be no question of "substantive arbitrability" here; the disputed work assignment was precisely the type of dispute that the parties agreed to submit to arbitration under the Plan. Plaintiff, however, contends that the Appeal Board's own procedural regulations prevented it from

making the decision it did. Plaintiff points to no express provision which says this in so many words. Rather, plaintiff argues that there was no provision in the rules which authorized the Board to make the decision it did. On the basis of this lack of express provision, plus plaintiff's interpretation of some of the provisions of the Plan that, at the very least, is open to doubt, and plaintiff's unsupported allegations of what the parties intended when they signed the plan, this Court is asked to substitute its judgment for that of the arbitrators. If it were to do so, the Court must necessarily decide the questions about the authority of the Joint Negotiating Committee which the plaintiff raises in its argument on prematurity.

The mere recital of the plaintiff's claims militates against upholding them. The spectacle of this Court thrusting itself into the arbitration process in such a manner is alien to the fundamental concepts underlying our national labor policy. To do so would emasculate the arbitration process, which the Steelworkers trilogy (United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)) teaches us is the cornerstone of that policy. There can be no doubt that if the Court took it upon itself to interfere in this dispute, the attempt to settle work assignment disputes in the construction industry by means of an arbitration agreement would soon be abandoned. An agreement entered into so hopefully at the White House last February and put into effect last April is entitled to a better opportunity to prove its worth in the industry.

An examination of the Plan shows that it expressly authorizes the Appeals Board, in the exercise of its discretionary jurisdiction, to prescribe rules as to the types of cases which it will accept for review, and to establish procedural regulations for the effective administration of the appeals procedure. (Plaintiff's Exhibit 2, Article II, Sec. 5.) The rules established by the Board are subject to the approval of the Joint Negotiating Committee. (Plaintiff's Exhibit 2, Article II, Sec. 5.)

It appears, then, that the parties have provided in their agreement for administrative decision of the very question which plaintiff now asks the Court to determine; and, as they were free to do under our national labor policy, the parties chose to have these questions decided in the arbitration process, without the aid—or interference—of the courts. The Supreme Court recently held, in John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), that when the parties have agreed to submit a dispute to arbitration "procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." In the present case the parties provided for this result by contract. As indicated above, there are compelling reasons for giving effect to this agreement, and accordingly the complaint is dismissed.