**HORN TRANSFER LINES, INC., Appellant,**

**v.**

**Buford MORGAN, Appellee.**

Court of Appeals of Kentucky.

Dec. 10, 1965.

Adrian F. O'Bryan, Jerry A. Lloyd, Louisville, for appellant.

Ralph H. Logan, Hardy, Logan & Tross, Louisville, for appellee.

CHESLEY A. LYCAN, Special Commissioner.

On or about October 1, 1959, James G. Pressel and others formed a trucking company in Louisville known as the Merchants Truck Leasing Corporation. Rudy W. Schauberger was then the owner of an unincorporated trucking business known as the Horn Transfer Lines. Schauberger died in 1959 and his executrix, that year or in 1960, sold the Horn Transfer Lines to the Merchants Truck Leasing Corporation. This sale apparently included all assets and good will of the Horn Transfer Lines except the cash and accounts receivable. The name of the corporation organized by Pressel and others was later changed to the Horn Transfer Lines, Inc., and the latter is the appellant herein.

The Merchants Truck Leasing Corporation was not operating under a labor union contract, although the record indicates some of its drivers were union members. The Horn Transfer Lines, the proprietorship owned by Schauberger, was operating under a labor contract with General Drivers, Warehousemen and Helpers Local Union No. 89, known as the Central States Area Local Cartage Agreement. We shall hereinafter refer to the former as "the union" and to the latter as "the contract."

Appellee, Buford Morgan, began working for the Merchants Truck Leasing Corporation in 1959, and continued his employment with it up to September 1, 1960, and after its name was changed to the Horn Transfer Lines, Inc. Morgan was a union member but there was no checkoff for dues, as he paid his dues direct to the union. He was on the latter date discharged on the ground that he had failed to spread a tarpaulin over a loaded truck, thus permitting the cargo to get wet and causing his employer to pay $350 in damages. The damage to the cargo and the fact that Horn Transfer Lines, Inc., paid the damage is established, but the jury found in favor of Morgan on appellant's counterclaim against him for this and a few other items.

After the purchase of the Horn Transfer Lines by the Merchants Truck Leasing Corporation and its reinstitution as the Horn Transfer Lines, Inc., the latter was approached by agents of the union, and an agreement was signed wherein the Horn Transfer Lines, Inc., agreed to contribute to the health, welfare and pension fund of the union. This fund was set up in and was included as a part of the contract.

Upon appellee's discharge on September 1, 1960, he immediately filed a grievance that he had been unfairly discharged, which was heard pursuant to the contract by a committee composed of three representatives from local cartage companies and three representatives of the union, as provided by Article VII of the contract. The committee made an award dated September 22, 1960, which reads:

"The decision of the committee is that Buford Morgan be put back to work and is to be paid for all time lost since September 2, 1960, and that all pay now due or being withheld from Mr. Morgan by Horn Transfer Company be paid to him on or before the next regular pay day."

After appellant's refusal to comply with the ruling of the committee, this action to enforce its award was begun in the circuit

court. The trial court, under the facts outlined, allowed the jury to find whether or not appellant had accepted the provisions of the union contract and, if they so determined, to award appellee $2.65 per hour for a 40-hour week from September 2, 1960, until March 2, 1962. The jury made a finding that a contract was brought into existence by appellant with the union and returned a verdict that appellee should receive total wages for the time he was out of work, namely, for a period of 78 weeks.

On this appeal it is first asserted there was no evidence of material substance introduced which in any wise established a contract between the Horn Transfer Lines, Inc., and the union.

Section 3 of the contract entered into between the Horn Transfer Lines, the company owned by Schauberger, and the union provides in part:

"This Agreement shall be binding upon the parties hereto, their successors, administrators, executors and assigns. In the event an entire operation or any part thereof is sold, leased, transferred or taken over by sale, transfer, lease, assignment, receivership or bankruptcy proceedings, such operation shall continue to be subject to the terms and conditions of this Agreement for the life thereof. On the sale, transfer or lease of any individual run or runs, only the specific provisions of this contract, excluding supplements or other conditions shall prevail. It is understood by this section that the parties hereto shall not use any leasing device to a third party to evade this contract. The Employer shall give notice of the existence of this Agreement to any purchaser, transferee, lessee, assignee, etc., of the operation covered by the Agreement or any part thereof. Such notice shall be in writing with a copy to the Union not later than the effective day of sale."

It was revealed that appellant was fully aware of the contract and its contents.

Furthermore, it affirmatively signified its acceptance of it when it executed the health, welfare and pension fund agreement. It is not in dispute that appellant made payments under this agreement which inured to the benefit of appellee. It also recognized the grievance procedure provided in the contract, because it helped set up the committee that passed on appellee's grievance and its president participated in the hearing before the committee.

■ A case such as this is subject to the federal law and a state court is required to apply federal principles in such a case. The jury determined under the evidence that the contract in question did in truth exist between appellant and the union. We cannot say the jury finding in this respect is not supported by the facts.

The Supreme Court of the United States has held that an employee may bring a suit for the enforcement of his rights under a contract consummated for his benefit, and that the right of the labor organization to do so does not preclude the right of an employee to seek on his own behalf a recovery to which he is entitled. In addition, that Court held that the federal law is applicable to suits for violations of collective bargaining contracts while it, at the same time, ruled the state courts had jurisdiction of such an action by an employee against an employer. See Smith v. Evening News Association, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246.

■ In this case, the appellee, an individual employee, brought his own suit. The right to present such an action was vested in him by Section 301(a) of the Labor Management Relations Act of 1947. See 29 U.S.C.A. § 185(a).

It is next asserted the evidence introduced did not warrant a jury determination that, if they found a contract was in being between appellant and the union, they should allow a recovery by appellee of total wages for a period of 78 weeks. It is claimed the proof is to the effect that, dur-

ing this time, appellee worked intermittently and irregularly with other truck lines and in other employments.

Appellant, as regards the point raised, relies upon Abrams v. Jackson County Board of Education, 230 Ky. 151, 18 S.W. 2d 1000, and Stewart Dry Goods Co. v. Hutchison, 177 Ky. 757, 198 S.W. 17, L.R.A. 1918C, 704. The Abrams case stands for the proposition that when a contract for personal services is wrongfully terminated or suspended by an employer, the employee must minimize his damages by seeking to find similar employment in the locality, and he may not recover more than the difference between the contract price and the amount he had earned or could have earned by reasonable diligence.

It was not shown during the trial what amount, if any, appellee had earned within the 78-week period. After the entry of judgment on the verdict, and in connection with a timely motion for a new trial, appellant filed affidavits which tended to show appellee had taken in over $3000 in the operation of a truck and had been sick and hospitalized at least a portion of the time. The trial court overruled the motion.

■ The contention that appellant is entitled to a new trial is based upon so-called newly discovered evidence. To entitle a party to a new trial for such a reason, the party must have been vigilant in preparing his case. See Brady v. B. & B. Ice Co., 239 Ky. 170, 39 S.W.2d 252. See also Petrie v. Petrie, Ky., 262 S.W.2d 182; Stockdale v. Eads, Ky., 263 S.W.2d 133.

■ It is our opinion, from reading the affidavits, that appellant failed to use that diligence which would entitle it to a new trial. No good and sufficient reason is advanced why the information contained in the affidavits could not have been secured before and presented at the trial.

■ More than that, the grievance procedure prescribed in the contract, and pursued by the parties to this appeal, has the same weight as an arbitration decision. See General Drivers, Warehousemen and Helpers Local Union No. 89 v. Riss and Company, 372 U.S. 517, 83 S.Ct. 789, 9 L. Ed.2d 918; General Drivers, Warehousemen and Helpers Local Union No. 89 v. Moore, 373 U.S. 335, 84 S.Ct. 363, 11 L.Ed. 2d 370 (reversing the Kentucky Court of Appeals, 356 S.W.2d 241).

Wherefore, it is recommended that the judgment of the trial court be affirmed.

The opinion is approved by this Court and the judgment is affirmed.