**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, LOCAL 379, et al.**

v.

**DAY & ZIMMERMAN, INC.**

**Civ. A. No. TX–80–33–CA.**

United States District Court,
E. D. Texas,
Texarkana Division.

Feb. 4, 1982.

Hal K. Gillespie, Hicks, Gillespie, James & Agee, P. C., Dallas, Tex., for plaintiffs.

LeRoy Autrey, Autrey & Weisenberger, Texarkana, Tex., for defendant.

## MEMORANDUM OPINION [1]

JOE J. FISHER, District Judge.

The six plaintiff unions [2] brought this suit on behalf of all employees represented by them employed by defendant Day & Zimmerman, Inc., pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to enforce an agreement reached in collective bargaining. At the outset, the Court notes that Day & Zimmerman is an "employer" and the plaintiffs are "labor organizations" under the Labor Management Relations Act. 29 U.S.C. § 152(2, 5).

The case was tried without a jury on October 24, 1981. The Court originally impaneled an advisory jury, but dismissed it after the trial began because it was obvious that there were no disputed fact questions.

1. This Memorandum Opinion constitutes the Findings of Fact and Conclusions of Law required by Rule 52, F.R.Civ.P.

2. The plaintiffs are the United Brotherhood of Carpenters and Joiners of America, Local 379; International Brotherhood of Electrical Workers, Local 301; United Brotherhood of Carpenters and Joiners of America (Millwrights), Local 2534; Brotherhood of Painters and Allied Trades, Local 459; United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local 327: and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 878.

## I THE FACTS

During the period involved in this case, eleven unions represented Day & Zimmerman's employees at the Lone Star Army Ammunition Plant. These unions represented various collective bargaining units certified by the National Labor Relations Board. Nine of the unions had collective bargaining agreements with Day & Zimmerman which expired on April 14, 1978, and two unions had collective bargaining agreements which expired on May 14, 1978.

The six plaintiff unions negotiated jointly with the defendant through a committee. Day & Zimmerman, through its chief spokesman Carl Evans, stated that it would make a final contract proposal in advance of the contract expiration date. The company also stated that the proposal would be truly final in that no improvements would be made in the event any of the nine unions chose to reject the proposal and go on strike. On April 13, 1978, the company did make a final proposal for a three year contract which provided, in essence, for a general wage increase of 8% the first year, 7½% the second year, and 7% the third year. On that day, the plaintiffs expressed some concern that the final offer was not truly final. Jon Gardner, spokesman for the plaintiffs, asked Evans what would happen if the six unions agreed to the proposal, but the remaining three unions struck and received improvements as a result of the strike. Evans responded that there would not be any increases, but if Day & Zimmerman did give increases to resolve the strike, they would pass them on to the six unions on a percentage basis.

The plaintiff unions then recommended that their members accept the company offer and by April 15, the membership accepted the final offer. The three unions that were not in the committee rejected the final offer and went on strike on April 15. These were the International Chemical Worker's Union, Local 526, (ICWU), Office and Professional Employees International Union, Local 303, and the International Machinists Union, Local 1243 (IMU). The plaintiff unions did not strike, as their agreement contained a no strike provision.

In an attempt to resolve the strike, the defendant considered granting a large number of employees "classification" increases. The company finally did agree to give the striking unions improved pension contributions and some "classification" increases. The defendant passed on the pension improvements, but did not pass on the classification increases. Specifically, 58 of 858 ICWU members received upward adjustments in their base pay rate, and at least ten members of the Machinists Union received upward adjustments.

So far as the Court can determine, classification adjustments were changes in the hourly rate of pay attributed by the company to revised job descriptions, new or combined job classifications, and "inequity adjustments." These adjustments resulted in increases in the hourly rate of pay in excess of 8%. For example, the classification of "Janitor, Administrative Area" was reclassified as "custodian" with an increase of 21 cents over and above the 8% general increase.[3] These revised classifications appear to be no more than name changes for the jobs involved. The Court makes no finding as to whether the classification adjustments were justified, as that is immaterial to whether the parties agreed to pass on any increases to the plaintiffs.

The plaintiffs first filed a grievance with respect to the claims in the complaint under the grievance and arbitration provisions in the agreement. The grievance was submitted to an arbitrator who found that he lacked jurisdiction because the dispute did "not arise over an interpretation or application of the terms of the written agreement." Arbitrator's Decision at 13. That finding is not seriously challenged here.

## II DISCUSSION

### A. Standing

■ The defendant contends that the plaintiffs lack standing to bring this suit

---

**3.** In the case of the ICWU, the 8% general wage increase for the first year was applied to the weighted average of all the employees represented by that union, resulting in a thirty seven (.37) cents per hour increase for each classification for the first year.

for monetary damages, as it is the members who have sustained the loss. It is well settled, however, that unions have standing to sue an employer under section 301 of the LMRA, 29 U.S.C. § 185, to recover monetary benefits claimed by its members under a collective bargaining agreement. *See, e.g., Auto Workers v. Hoosier Corp.*, 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966).

## B. Preemption

■ Day & Zimmerman also contends that because its conduct in not reducing an oral agreement to writing may constitute an unfair labor practice, the National Labor Relations Board has exclusive jurisdiction. Settled law, however, is to the contrary. *See, e.g., Smith v. Evening News Ass'n*, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962). In *Smith*, the Supreme Court held that "[t]he authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by § 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301." *Id.* at 197, 83 S.Ct. at 269.

## C. The Agreement

The Court finds that there was an oral agreement reached between the plaintiff unions and the defendant that the defendant would grant the plaintiffs any increases that the defendant gave the striking unions. This agreement is in addition to the agreements reached between the parties which were later put into writing by the defendant.

Much confusion is generated in the briefs by the defendant's characterization of this suit as one for reformation. There was, however, only one agreement. That agreement was for a general wage increase of 8% for the first year, 7½% for the second year, and 7% for the third year, plus an additional increase equal to the amount of any increase granted to the three striking unions, if any. This suit is to enforce that agreement.

The defendant purported to embody the agreement into a writing omitting the controversial language. The plaintiffs never agreed or accepted this writing as embodying the agreement. Thus, there is nothing to reform, as the defendant's purported contract has no effect; there is only the oral agreement to enforce. The remaining issues are (1) whether the statute of frauds bars enforcement of the agreement; (2) whether it was breached; and (3) what is the proper remedy.

## D. Statute of Frauds

■ Day & Zimmerman contends that the oral agreement is not enforceable because it violates the Texas statute of frauds as an agreement not to be performed within one year. *See* Tex.Bus & Com.Code Ann. § 26.01 (Vernon 1968). The Court finds that the statute of frauds does not bar enforcement of the labor agreement.

It is well settled that a union and employer's adoption of a labor contract is not dependent on the reduction to writing of their intention to be bound .... Instead, what is required is conduct manifesting an intention to be bound by the terms of the agreement.

*NLRB v. Haberman Constr.*, 641 F.2d 351, 355–56 (5th Cir. 1981) (en banc) (footnotes omitted). *See NLRB v. Alterman Transp. Inc.*, 587 F.2d 212, 221 (5th Cir. 1979) ("The doctrines of traditional contract law are to a large extent inapplicable in the collective bargaining context."); *San Antonio Machine & Supply Corp. v. NLRB*, 363 F.2d 633, 636–37 (5th Cir. 1966).

## E. Breach

■ Having found that a contract existed between the plaintiffs and the defendant that is not subject to the statute of frauds, the next issue is whether Day & Zimmerman breached the contract. Since it is clear that the defendant agreed to pass on "all increases" to the plaintiffs, and that the defendant did not pass along the classification adjustments, the question is whether the classification adjustments are increases. The Court finds that they are. They resulted in a higher rate of pay for the employees

affected. It is of no importance that the increases were not given to all employees in the striking unions.

It would be a slightly different question if the classification adjustments were part and parcel of a bona fide and simultaneous change in the quantum or quality of work required of the affected employees. The evidence shows, however, that the adjusted classifications were for the same work as was performed immediately prior to contract expiration.

## III  DAMAGES

### A.  Compensatory Damages

The plaintiffs contend that the measure of damages should be calculated as follows:

That the amount in cents per hour of any upward adjustment for any such classification would be multiplied by the number of employees in such classification for a subtotal; that all such subtotals would be totaled and serve as a dividend to be divided by the total number of employees [in the three striking unions] with the total (1,056) to serve as a divisor; and that the resulting quotient in cents per hour would ... be added to the hourly rate of pay for each job classification ...

Pretrial Order, p. 23. The defendants offer the Court no alternative suggestion as to how the increases should be calculated. They only note that "[t]here are, of course, numerous ways in which one could calculate the Plaintiff Unions' claim for a general wage increase based on the fact that 68 of 1056 employees received wage adjustments, and all such calculations would produce different results." Defendant's Post Trial Brief, at 7. The Court finds that the plaintiffs' proposed method is fair and reasonable, in that it takes into account the fact that only about 6% of the striking employees received increases.

### B.  Attorney's Fees

■ The plaintiffs also seek attorney's fees as they sought a "common benefit ... to a discernible class  ...." As a general rule, attorneys fees are not recoverable by a prevailing party in the absence of statutory authorization. *Alyeska Pipeline Service Co. v. The Wilderness Soc.*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). An exception to the general rule was established in *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1975).

In *Hall*, the Supreme Court established the "common benefits" rationale for awarding attorney's fees when the plaintiff's successful litigation confers substantial benefit on members of an ascertainable class. No bad faith need be shown, and the trial court's exercise of its equitable power to award fees is not to be disturbed absent an abuse of discretion. *Christopher v. Safeway Stores*, 644 F.2d 467, 472 (5th Cir. 1981). Both *Hall* and *Christopher*, however, involved suits by employees against unions or employers under the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 et seq. The present suit is one under section 301 of the LMRA, 29 U.S.C. § 185, brought by a union on behalf of members against the employer. Although an award of attorney's fees might be appropriate under section 301, *see, e.g., United Steelworkers of America v. United States Gypsum Co.*, 492 F.2d 713, 734 (5th Cir.), *cert. denied*, 419 U.S. 998, 95 S.Ct. 312, 42 L.Ed.2d 271 (1974), the facts of this case do not warrant such relief. Since the unions sued on behalf of all affected employees, the employees contributed equally to the litigation expenses and were not unjustly enriched. Furthermore, there was no bad faith on the part of the defendant and no other circumstances warrant an award of attorney's fees.