**LEVEL I SPORTSWEAR, INC. and Hartfree Group, Ltd., Plaintiffs,**

v.

**Sol C. CHAIKIN, as President of International Ladies Garment Workers Union, AFL–CIO; International Ladies Garment Workers Union, AFL–CIO; Samuel Byer, as Secretary-Treasurer of New York Coat, Suit, Dress, Rainwear and Allied Workers' Union, a Joint Board affiliated with International Ladies Garment Workers Union; New York Coat, Suit, Dress, Rainwear and Allied Workers' Union, a Joint Board affiliated with International Ladies Garment Workers Union; Arthur Toretz, as President of Office and Distribution Employees Union, Local 99, a Local Union affiliated with International Ladies Garment Workers Union; Office and Distribution Employees Union Local 99, a Local Union affiliated with International Ladies Garment Workers Union; K Mart Apparel Corp.; S.S. Kresge Company; Woolco Department Stores, a Division of F.W. Woolworth Co.; F.W. Woolworth Co.; and Russell Burdsall & Ward Corporation, d/b/a Mangel Stores, Defendants.**

No. 81 Civ. 7407(PNL).

United States District Court, S.D. New York.

May 20, 1987.

John Timbers, Stamford, Conn., Henry C. Woicik, New York City, for plaintiffs.

Lewis, Greenwald, Kennedy & Lewis, New York City, Nicholas F. Lewis, Thomas M. Kennedy, of counsel, for defendant New York Coat, Suit, Dress, Rainwear and Allied Workers' Union, ILGWU, AFL–CIO ("Joint Board").

Dickstein, Shapiro & Morin, Washington, D.C., by Sidney Dickstein, Richard Greenspan, New York City, for defendant Local 99.

## OPINION AND ORDER

LEVAL, District Judge.

These are motions by plaintiffs Level I Sportswear, Inc. and Hartfree Group, Ltd. ("Level I") to dismiss, and otherwise dispose of, four counterclaims brought by defendant New York Coat, Suit, Dress, Rainwear and Allied Workers' Union ("Joint Board"). The amended complaint asserts claims against Joint Board and others under the Labor Management Relations Act,

29 U.S.C. § 141 *et seq.* The motion is granted in part and denied in part.

*Background*

Level I was in the business of manufacturing women's sportswear. At all relevant times Clifford Hartman was the president of Level I, and his wife Erica Hartman was the controller. Prior to 1980, some of its employees were represented by the Amalgamated Workers Union, Local 88, Retail, Wholesale, Department Store Union, AFL–CIO ("Local 88"). In that year defendant Joint Board requested, through two of plaintiffs' employees, that it be recognized as the collective bargaining representative for employees in plaintiffs' sorting and cutting department. The two requesting employees were fired. Others were questioned as to their union activities. In response, Joint Board began picketing Level I's factory. Level I claims that Joint Board induced retailers to boycott Level I's products.

In April 1980 Joint Board filed an unfair labor practice charge against Level I with the National Labor Relations Board (NLRB). In a settlement stipulation, Level I agreed to reinstate the discharged employees, and not to interfere with union activities.

Shortly thereafter, Level I went out of business. In November, 1981, plaintiffs filed this action against several unions and retailers alleging that boycotting and picketing caused plaintiffs' business to fail. Judge Gagliardi dismissed portions of the complaint. The Amended Complaint was filed to which Joint Board responded by an Amended Answer and Counterclaims. Plaintiffs then moved for dismissal of the four counterclaims, contending that this court was without jurisdiction to adjudicate them. Thereafter the case was transferred from Judge Gagliardi's docket to mine and further briefing was directed.

*Discussion*

### I.

Plaintiffs contend that each of the first three counterclaims must be dismissed because this court's jurisdiction is preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* It is settled law that "[w]hen an activity is arguably subject to § 7 or § 8 of the [National Labor Relations] Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board...." *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 245, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959).

■ The counterclaiming defendants originally described the first three counterclaims as alleging a conspiracy between Local 88 and Level I to victimize Level I's workers and depress their labor conditions. In an effort to avoid preemption, they now characterize these counterclaims as alleging the state torts of fraud and deceit and nuisance. The issue of preemption, however, does not turn on how the claims are characterized. The focus is "whether the conduct at issue was arguably protected or prohibited by the N.L.R.A." *International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 106 S.Ct. 1904, 1914, 90 L.Ed.2d 389 (1986).

The First Counterclaim alleges that Local 88 and the Hartmans "intentionally conspired to tortiously injure defendants Joint Board and its members by depressing labor conditions ... in the garment industry...." The counterclaim alleges, as elements of the conspiracy, a phony sweetheart contract between Local 88 and Level I, that membership in Local 88 was limited to fewer than 10% of Level I's work force, that Level I contracted work without regard to conditions of employment, discharged and intimidated employees who protested the sweetheart arrangement, and engaged in other unfair labor practices.

■ Section 8(a) of the National Labor Relations Act, 29 U.S.C. § 158(a), provides, in relevant part, that "It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 157 of this title; (2) to dominate or interfere with the formation or administration of any labor organization.... (3) ... to encourage or discourage membership in any labor organization...." The thrust of the First Counterclaim, that Level I de-

pressed labor conditions by preventing, through a variety of means, the establishment of a legitimate and representative labor union, falls quite clearly within the scope of § 8(a). Accordingly, this court is without jurisdiction to entertain the First Counterclaim, and it must be dismissed.

■ The Third Counterclaim is even more clearly within the scope of the NLRA, and must likewise be dismissed. It alleges that the Hartmans "entered into their corrupt relationship with Local 88 for the dual purpose of denying to plaintiffs' employees their lawful right to organize and select their own collective bargaining representative and of denying to defendant Joint Board its lawful opportunity to organize said employees and to accept them into membership." To the extent to which this states a claim distinct from that of the First Counterclaim, it is seeking relief for unfair labor practices. As such, it too is preempted.

■ The Second Counterclaim alleges that plaintiffs and Local 88 "tortiously conspired to injure defendant Joint Board and its members ... by falsely holding itself out to the public as an employer whose garments were manufactured under decent labor conditions." This claim does not fall within the purview of § 8. It survives the challenge of preemption. The sufficiency of this claim is considered below.

## II.

No issue of preemption is raised regarding the Fourth Counterclaim, an action under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), alleging plaintiffs' breach of the collective bargaining agreement they entered into with Local 88. Specifically, this counterclaim alleges that plaintiffs "failed and refused to pay production and maintenance employees" wages and benefits to which they were entitled. Section 301 expressly provides for independent jurisdiction in the federal courts. Actions under § 301 are thus not subject to *Garmon* preemption. *Smith v. Evening News Ass'n,* 371 U.S. 195, 197–201, 83 S.Ct. 267, 268–70, 9 L.Ed.2d 246 (1962). Plaintiffs contend,

however, that there are several other bases for dismissing the Fourth Counterclaim, including lack of standing, failure to arbitrate and the running of the statute of limitations.

Judge Gagliardi has previously ruled that Joint Board did not have standing to advance its members' claims for breach of Level I's collective bargaining agreement since it was neither a party to the agreement nor did it meet the standard for associational standing set out in *Warth v. Seldin,* 422 U.S. 490, 515, 95 S.Ct. 2197, 2214, 45 L.Ed.2d 343 (1975). *Level I Sportswear v. Chaikin,* 99 Lab.Cas. (CCH) ¶ 10,646 (S.D.N.Y. Jan. 24, 1983) [Available on WESTLAW, DCT database]. The Supreme Court in *Warth* explained that where "the damage claims are not common to the entire membership, nor shared by all in equal degree" the participation of the individual members would be necessary. 422 U.S. at 515, 95 S.Ct. at 2214. Since Joint Board sought damages for injuries not common to its entire membership, it could not go forward as a representative for their claims. Accordingly, Judge Gagliardi held that Joint Board lacked standing and denied its class certification motion.

One month later, a former employee of Level I, Ms. Negil Nunez, filed a motion to intervene as class representative in the Fourth Counterclaim. Plaintiffs oppose Nunez's intervention on the grounds that she is barred by her failure to arbitrate, as required by the collective bargaining agreement, as well as by the statute of limitations. Although it is undisputed that the proposed intervenor failed to exhaust arbitration, she argues that this is no bar to her prosecuting the counterclaim as there are sufficient allegations of collusion between Level I and Local 88 to demonstrate that arbitration would be futile.

■ Defendants alleged, in language incorporated into the Fourth Counterclaim, that "Local 88 and plaintiff Level I were parties to a collusive collective agreement" and that an "analysis of the Local 88/Level I collective agreement readily demonstrates its corrupt core." Where, as here,

the claim is predicated on an allegation of conspiracy between the employer and the union, the claimant "cannot be forced to submit that issue to an arbitration between the employer and the union." *Sheridan v. Liquor Salesmen's Union, Local 2,* 444 F.2d 393, 396 (2d Cir.1971) *quoting Hiller v. Liquor Salesmen's Union Local No. 2,* 338 F.2d 778, 779 (2d Cir.1964). This situation is analogous to the exceptions to the exhaustion requirement recognized in *Vaca v. Sipes,* 386 U.S. 171, 185–87, 81 S.Ct. 903, 914–15, 17 L.Ed.2d 842 (1967).

The question of timeliness remains. During the pendency of this case, the Supreme Court held that the appropriate statute of limitations for hybrid § 301 actions, such as this one, was six months. *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Although plaintiffs waived this defense as to defendant Joint Board's prosecution of the counterclaim, they may nonetheless raise it with respect to the proposed intervenor.

The exact date the statute began running is uncertain, but it is no earlier than April 29, 1980, when Joint Board, "in response to and because of" plaintiffs' alleged violations of federal labor law, commenced a strike at plaintiffs' New York premises. The motion to intervene was made thirty-four months thereafter on February 25, 1983. The question is how long during the intervening time period the statute was tolled.

The filing of a class action tolls the statute of limitation to "all members of the putative class until class certification is denied." *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983); *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538, 553–54, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). Two periods of tolling under this rule are undisputed. One was from the filing of Joint Board's putative class action on December 23, 1981 until Judge Gagliardi denied certification on January 25, 1983, which covers thirteen months. The other was from the filing of a class action in state court on June 25, 1980 until class certification was denied on May 27, 1981 (eleven months). The remaining ten months exceed the six months permitted by the statute of limitations.

The proposed intervenor contends, however, that the tolling due to the state court action should not end with the state Supreme Court's denial of class certification, but should extend for twelve months during the interlocutory appeal that was allowed by state procedure. This would toll an additional seven months (after subtracting out five months already tolled by virtue of the federal court action) and would bring the intervention within the statute. As authority, defendant-intervenor cites *Burnett v. New York Central R.R.,* 380 U.S. 424, 435, 85 S.Ct. 1050, 1058, 13 L.Ed.2d 941 (1965), which held, in the context of FELA suits brought in state court, that "the limitation provision is tolled until the state court order dismissing the state action becomes final by the running of the time during which an appeal may be taken or the entry of a final judgment on appeal." Plaintiff contends that tolling ends with the trial court's denial of class certification without allowing time consumed in the interlocutory appeal, citing *Monarch Asphalt Sales v. Wilshire Oil Co.,* 511 F.2d 1073, 1079 (10th Cir.1975). The *Monarch* court decision turned, in part at least, on its observation that federal court orders denying class certification are "interlocutory and not appealable." *Id.* The question presented here is whether tolling should extend further in cases where there exists a right to appeal immediately from the denial of class certification and appeal is, in fact, pursued.

As explained by the Supreme Court, statutes of limitations "are primarily designed to assure fairness to defendants." *Burnett,* 380 U.S. at 428, 85 S.Ct. at 1054. In these circumstances, where the Joint Board and related claimants have been asserting this claim against Level I almost continuously since June 1980, first in state and then in federal court, it seems entirely fair to extend the tolling during the period in which an appeal was actually pursued. The proposed intervenor cannot be reason-

ably charged with sleeping on her rights by awaiting the decision on appeal. I find that there was no undue procrastination and that counterclaim-defendants suffered no prejudice from intervenor's delay during the appeal. I find that the statute of limitations has not run as to the intervenor.[1]

Whether Ms. Nunez's motion to intervene should be granted is a separate question, and one which the parties have never fully briefed. Judge Gagliardi's memorandum decision of February 7, 1984 directed that the intervention motion would be "held in abeyance" pending the resolution of the motions to dismiss the counterclaims. Plaintiffs have never formally responded to Ms. Nunez's motion. Plaintiffs are hereby directed to file any opposition to intervention within twenty days.[2] The proposed intervenor will have ten days to reply.

### III.

On the assumption that the Fourth Counterclaim will go forward, there is no merit to plaintiffs' jurisdictional challenges to the Second Counterclaim which is founded on state law. The Second Counterclaim and the Fourth, over which there is independent federal jurisdiction, derive "from a common nucleus of operative fact" and judicial economy is served by trying the two claims together. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Thus, there is pendent jurisdiction over the Second Counterclaim.

■ Plaintiff also moves to dismiss the Second Counterclaim for failure to state a claim. As noted above, the Second Counterclaim alleges that the Hartmans, together with Local 88 "tortiously conspired to injure defendant Joint Board and its members by trading upon and benefiting from defendants' efforts and expenditures by falsely holding itself out to the public as an employer whose garments were manufactured under decent labor conditions."

(¶ 67) Defendants claim to be injured by this conduct in the amount of $50 million.

Defendants argue that these allegations make out New York common law claims for public nuisance and fraud and deceit. In New York a public nuisance "consists of conduct or ommissions which offend, interfere with or cause damage to the public in the exercise of rights common to all ... in a manner such as ... to endanger or injure the property, health, safety or comfort of a considerable number of persons...." *Copart Indus. v. Consolidated Edison Co.,* 41 N.Y.2d 564, 568, 394 N.Y.S.2d 169, 172, 362 N.E.2d 968, 971 (1977). *See also New York v. Shore Realty Corp.,* 759 F.2d 1032, 1050 (2d Cir.1985) (citing *Copart* standard). A public nuisance action may be brought by the state, or by an individual "when he suffers special damages...." *Copart,* 41 N.Y.2d at 568; 394 N.Y.S.2d at 172, 362 N.E.2d at 971.

Defendants' allegations do not adequately plead public nuisance. There is no allegation that the class of victims is any broader than Joint Board and its members. While they may indeed constitute a "considerable number of persons," the rights allegedly violated are not "common to all," nor are they the type of public rights the violation of which may be redressed through a public nuisance action.

■ It is a close question whether they adequately plead fraud. The elements of fraud in New York are "representation of a material fact, falsity of the representation, scienter, reliance, and damages." *Freschi v. Grand Coal Venture,* 767 F.2d 1041, 1050 (2d Cir.1985). *See also Jo Ann Homes at Bellmore, Inc. v. Dworetz,* 25 N.Y.2d 112, 119, 302 N.Y.S.2d 799, 803, 250 N.E.2d 214, 217 (1969) (essential elements of fraud are "representation of fact, which is either untrue and known to be untrue or recklessly made, and which is offered to deceive the other party and to induce them

---

1. Plaintiffs' argument that the Fourth Counterclaim be severed and tried separately is without merit. Although distinct, the issues involved in the counterclaim are related to those of the complaint. Judicial economy is served by trying these matters together. There is no basis for relegating the Fourth Counterclaim to state court, as plaintiffs suggest.

2. Plaintiffs' brief shall not exceed twenty double-spaced pages.

to act upon it, causing injury"). Although the language of the Second Counterclaim is confusing, contrived and without specificity, it is bolstered by defendants' answers to interrogatories, and I cannot say with conviction that it fails to state a claim for fraud.

Similarly, plaintiffs have failed to show any entitlement to summary judgment.

*Conclusion*

The First and Third Counterclaims are preempted by the National Labor Relations Act. Consequently, this court is without jurisdiction to adjudicated these claims. The Second and Fourth Counterclaims survive plaintiffs' challenges. The motion to dismiss Negil Nunez's petition to intervene as time barred is denied. The parties are directed to complete promptly the briefing of this motion to intervene.