Thomas MORGAN, Plaintiff,

v.

COLONIAL GAS COMPANY, Defendant
and Third-party Plaintiff,

v.

UNITED STEELWORKERS OF AMER-
ICA, and United Steelworkers of Amer-
ica Local Union No. 13507, Third-party
Defendants.

Civ. A. No. 91–10579–S.

United States District Court,
D. Massachusetts.

Sept. 10, 1991.

694

Joseph P. Flannery, Flannery & Ansel, Boston, Mass., Nicholas Grefe, Law Offices of Nicholas Grefe, Hyannis, Mass., for plaintiff.

Gordon P. Katz, Widett, Slater & Goldman, Boston, Mass., Leonard Y. Nason, Uehlein & Nason, Natick, Mass., Charles A. Cook, Colonial Gas Co., Vice President & General Counsel, Lowell, Mass., for defendant and third-party plaintiff.

Warren H. Pyle, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, Boston, Mass., for third-party defendants.

## MEMORANDUM AND ORDER ON THIRD–PARTY DEFENDANTS' MOTION TO DISMISS THIRD–PARTY COMPLAINT

SKINNER, District Judge.

### Background

Plaintiff Thomas Morgan filed a complaint in a Massachusetts Superior Court against defendant Colonial Gas Company (Colonial), alleging that Colonial violated Mass.G.L. c. 152 § 75A by refusing to re-hire Mr. Morgan following his recovery from an injury for which Worker's Compensation benefits had been paid, and further alleging that Colonial violated Mass. G.L. c. 151B by refusing to rehire Mr. Morgan, now a handicapped person as defined by c. 151B § 4(16).

Colonial denied the material allegations of the plaintiff's complaint and raised as an affirmative defense the existence of two settlement agreements between Colonial and Morgan's national and local unions, the United Steelworkers of America and United Steelworkers of America Local No. 13507 (Steelworkers). Colonial then filed a third-party complaint against the Steelworkers, alleging that the Steelworkers were authorized to and in fact did bind Morgan to the settlement agreements, thereby precluding Morgan from maintaining suit on this matter. The complaint further alleges that if Morgan is not bound, and Colonial is liable to Morgan, such liability is attributable to the Steelworker's misrepresentations of their authority to act in Morgan's behalf, thus enti-

tling Colonial to indemnification from the Steelworkers.

Colonial removed the case to this court, basing removal jurisdiction on Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (Section 301), and 28 U.S.C. §§ 1331, 1441, and 1446.

The Steelworkers now move to dismiss the third-party complaint on the grounds this suit is preempted by federal law which gives the National Labor Relations Board (NLRB) primary jurisdiction where unfair labor practices are alleged.

### Discussion

The Steelworkers' motion to dismiss is based on the following reasoning: Colonial claims that a union official misrepresented his authority in the settlement negotiations for the plaintiff. Such misrepresentation of authority is an unfair labor practice. Unfair labor practices are determined exclusively by the NLRB. *See San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Therefore, if Morgan succeeds in his claim against Colonial, Colonial's only recourse against the union for indemnification would be for Colonial to file an unfair labor practice charge against the union with the NLRB. The Steelworkers characterize the *Garmon* rule as an "all-encompassing rule of preemption." The Steelworkers further cite two NLRB cases which stand for the proposition that "a party which misrepresents its authority to act in collective bargaining negotiations has not bargained in good faith."

Colonial does not contest the fact that the Steelworkers' misrepresentations, if any, would constitute an unfair labor practice, nor does it contest the fact that the *Garmon* preemption rule applies to those cases whose only issues are the determination of whether an unfair labor practice has occurred. Rather, Colonial argues that either the Steelworkers' alleged misrepresentations of authority during settlement negotiations were violative of the underlying collective bargaining agreement between the company and the union, thus giving rise to jurisdiction under Section 301, or

that the settlement agreements themselves were collective bargaining agreements within the scope of Section 301 and that jurisdiction of the federal courts and the NLRB is concurrent. As an alternate basis for jurisdiction, Colonial characterizes its right to indemnification as derivative of Morgan's right to sue the union for breach of its duty of fair representation, on the theory that Morgan's real complaint is that he is unhappy with the agreement his union negotiated for him.

*Underlying Agreement*

Section 301 gives federal district courts jurisdiction to hear suits based on alleged breaches of contract between labor organizations and employers:

> (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties ...

> (b) Any labor organization which represents employees ... and any employer whose activities affect commerce ... shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States....

Where a violation of a collective bargaining agreement is also an unfair labor practice, the NLRB's authority to deal with the unfair labor practice "is not exclusive and does not destroy the jurisdiction of the courts in suits under § 301." *Smith v. Evening News Association*, 371 U.S. 195, 197, 83 S.Ct. 267, 268, 9 L.Ed.2d 246 (1962). Therefore, Colonial's contention that the Steelworkers breached the underlying collective bargaining agreement by misrepresenting their authority to negotiate for the plaintiff constitutes a colorable claim within the jurisdiction of this court.

*The Settlement Agreements as "Collective Bargaining" Agreements*

The Steelworkers label Colonial's complaint as "a claim that a union official misrepresented his authority in collective bargaining." Similarly, Colonial's main argument relies heavily on *Rozay's Transfer v. Local Freight Drivers Local 208 etc.,* 850 F.2d 1321 (9th Cir.1988), *cert. denied,* 490 U.S. 1030, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989), which deals exclusively with defective formation of a collective bargaining agreement. Assuming that both litigants are correct in defining the Morgan settlement agreements as "collective bargaining" agreements, the Ninth Circuit's opinion in *Rozay's* is on point:

> LMRA § 301 carves out a broad exception to the NLRB's primary jurisdiction for claims arising out of collective bargaining agreements, whether or not such claims would be an unfair labor practice under section 8 of the NLRA. In cases involving conduct that is both an unfair labor practice and a violation of a collective bargaining agreement, the NLRB and the district courts have concurrent jurisdiction. Section 301, moreover, applies not only to suits for breach of a collective bargaining agreement once it is duly formed, but also to suits impugning the existence and validity of a labor agreement. Thus, we hold that the district court had jurisdiction under LMRA § 301 to entertain this action alleging fraudulent inducement in the formation of the agreement.

*Rozay's* at 1326. (citation omitted).

Of course, if the Steelworkers misrepresented their legal obligations as Morgan's representative, and Colonial should have been aware of any legal limit on their authority, the rule expressed in *Rozay's* would not apply. *See id.* at 1329–30. However, Colonial's allegations amount to a claim that the Steelworkers misrepresented that they had actual bargaining authority on behalf of Morgan and that Colonial reasonably relied on that representation. Consistent with the rule in *Rozay's,* Colonial may try these allegations in federal court.

*Derivative Jurisdiction*

Colonial claims an independent basis for jurisdiction through Morgan's right to sue the union for breach of its duty to provide Morgan with fair representation, since Colonial argues that Morgan's real dispute is with the results obtained from

the Steelworkers' settlement negotiations. Colonial misreads the meaning of "fair representation." "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). This exception is narrow. *See Sear v. Cadillac Automobile Co.*, 654 F.2d 4, 7 (1st Cir. 1981). There must be a showing that the union's breach "seriously undermined the integrity of the arbitration process." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 567, 96 S.Ct. 1048, 1057, 47 L.Ed.2d 231 (1976).

█ Morgan makes no such claim here against the Steelworkers. Indeed, it is Colonial's belief that Morgan withdrew a claim of failure of adequate representation which had previously been filed with the NLRB. Memorandum of Colonial Gas Company in Opposition to Motion to Dismiss Third-party Complaint at 3, fn. 1. Thus, a theory of derivative jurisdiction based on a lack of fair representation is not supported by the facts alleged in this case.

*Judicial Economy*

█ Finally, Colonial asks for consolidated proceedings in the interest of saving the parties from re-filing and litigating at the NLRB. Colonial asserts that the witnesses and evidence necessary for the determination of the third-party complaint are the same as those required for Colonial's declaratory judgment action, which has already been consolidated with this action. Mere convenience is not a substitute for subject matter jurisdiction, but as indicated, jurisdiction under § 301 has been established. The Steelworkers have advanced no practical reasons why the whole controversy should not be resolved in this court.

Accordingly, third-party defendants' motion to dismiss the third-party complaint is denied.