**Glenn D. GUTHRIE, Plaintiff,**

v.

**CENTRAL DISTRIBUTING COMPANY, INC., et al., Defendants.**

**No. CIV.A.2:99–0714.**

United States District Court,
S.D. West Virginia.
Charleston Division.

Nov. 17, 1999.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are (1) Defendant Local Union 175's ("the Union's") motion to dismiss for failure to state a claim and (2) Defendant Central Distributing Company, Inc.'s ("CDC's") motions to dismiss because (a) the subject grievance was not filed timely and (b) based on National Labor Relations Act preemption. By Order of October 19, 1999 the Court gave notice to the parties that matters outside the pleadings, in particular, a Department of Transportation ("DOT") drug policy, would be considered and these motions would be treated as motions for summary judgment.[1] For reasons discussed more fully below, the Court GRANTS Defendants' motions.

## I. FACTUAL BACKGROUND

Guthrie was an employee of CDC, a salesman/driver, for approximately twenty (20) years. He was a member of the Union, which was the certified collective bargaining representative for CDC's warehouse, salesmen, and mechanics. CDC and the Union were parties to a collective bargaining agreement ("CBA") effective May 1, 1996.

On February 19, 1999 Guthrie was discharged by CDC for failing a random urine screen by testing positive for mari-

juana. A second test on a split sample, that is, a second portion of the same urine sample, confirmed the positive result. After requesting more specific information about the test result, on March 12, 1999 Guthrie received a report stating the quantity of cannabinoids detected was 73 nanograms/milliliter ("ng/ml"). Guthrie alleges that the CDC testing cutoff level for marijuana is 100 ng/ml and, thus, CDC breached the CBA and wrongfully discharged him. Guthrie further alleges the Union refused to file a formal complaint with the company or take any actions to prosecute a grievance and thus breached its duty of fair representation.

## II. DISCUSSION

### A. Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or

---

1. After briefing on these motions was complete, Plaintiff moved for leave to file a supplemental affidavit and cross-motion for summary judgment, both of which were filed with the motion. The Court GRANTS the motion and has considered Plaintiff's submissions before issuing this Memorandum Opinion and Order.

the building of one inference upon another." To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]" *Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.* 57 F.3d 1317, 1323 (4th Cir.1995). It is through this analytical prism the Court evaluates the parties' motions.

## B. Actions Alleging Employer Breach of CBA and Union Breach of the Duty of Fair Representation

It is well-established that an individual employee may bring an action against his employer for breach of a CBA. *See Del-Costello v. Int'l Bhd. of Teamsters,* 462 U.S. 151, 162, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (citing *Smith v. Evening News Assn.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962)). Ordinarily, the employee is required to attempt to exhaust any grievance or arbitration remedies provided in the CBA, *id.* (citing *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)), and is bound by the result, *id.* This rule, however, can work an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in a discriminatory, dishonest, arbitrary, or perfunctory fashion and, thus, breaches its duty of fair representation. In such an instance, an employee may bring suit against both the employer and the union. *See id.* (citing *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)).

Such a lawsuit comprises two causes of action: a suit against the employer which rests on § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for an employer's breach of a CBA, and the suit against the union for breach of the duty of fair representation of the employee, implied under the scheme of the National Labor Relations Act.[2] *Id.* "Yet the two claims are inextricably interdependent. *To prevail against either the company or the union, [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry*

---

**2.** Section 301 provides: "[s]uits for violation of contracts between an employer and a labor organization representing employées ... may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Plaintiff invokes this Court's jurisdiction under Section 301 with regard to his wrongful discharge/breach of CBA allegation. (*See* Compl. ¶ 1.) Defendant CDC characterizes this action as alleging the employer's failure to bargain in good faith and invokes National Labor Relations Board jurisdiction. (*See* Def. CDC's Mot. to Dismiss Based on National Labor Relations Act ["NLRA"] Preemption.) The Court questions Defendant's characterization, but acknowl-

edges Section 8(b)(1)(A) of the NLRA prohibits labor organizations from arbitrary actions in representing union members. Nevertheless, "[t]he authority of the Board to deal with an unfair labor practice which also violates a collective bargaining contract is not displaced by [section] 301, but it is not exclusive and does not destroy the jurisdiction of the courts in suits under [Section] 301." *Smith,* 371 U.S. at 197, 83 S.Ct. 267. Accordingly, the Court finds and concludes it has jurisdiction to consider this hybrid action, which alleges both a Section 301 breach of the CBA and a breach of the duty of fair representation.

the burden of demonstrating a breach of duty by the Union." Id. (quoting United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981)(emphasis added)). The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both. Id.

## C. Plaintiff Failed a Random Drug Screen

Guthrie was discharged for failing a random drug screen when he tested positive for marijuana. Article 3 of the CBA provides: "the Employer reserves the right to discharge immediately any employee found either under the influence of intoxicants, habit-forming drugs, or narcotics...." (Def. Union's Submission in Supp. Summ. J., App. A at 2.) An addendum to the CBA provides that the penalty for first offense violation of this rule (cited as work rule number 6) is discharge.[3] The CDC Drug and Alcohol Testing Policy, provides "[a]ny employee found purchasing, possessing, or using illegal drugs on company premises, or while on company business, will be immediately terminated." (CDC Drug/Alcohol Policy, Pl.'s Br. in Opp'n to Summ. J., Ex. B at iii.) It is undisputed the company drug and alcohol policy was approved by the Union prior to this incident.

CDC's business involves the operation of commercial vehicles, beer trucks, in an industry affecting interstate commerce. (Compl.¶ 2.) The Department of Transportation ("DOT") prescribes regulations for alcohol and controlled substance testing for operators of commercial motor vehicles. See 49 U.S.C. § 31306(b). Those regulations include the initial test cutoff level and confirmatory test level for marijuana metabolites. See 49 C.F.R. § 40.29. The company's drug and alcohol policy is put in place to "comply with D.O.T. or other applicable regulations." (CDC Drug/Alcohol Policy at i.) According to the policy, "All employees that are subject to government regulations that require DOT drug/alcohol testing are subject to the requirements of this policy." (Id. at iii.) Guthrie was a salesman/driver and therefore subject to DOT drug testing.

Guthrie acknowledges the applicability of both the federal regulations and company policy. Accordingly, he submitted to random drug testing, as required. Guthrie's only response is that the company drug and alcohol policy provides that the "cutoff level" for initial drug testing for marijuana metabolites is 100 ng/ml. (CDC Drug/Alcohol Policy at iv.)[4] Because the level of marijuana metabolites in his urine sample was 73 ng/ml, Guthrie argues he was wrongly discharged and the Union had a duty to grieve the issue. The drug and alcohol policy, however, states just below the cutoff level chart: "NOTE: Detection cutoff levels and drugs to be tested for may change as technological advances or government regulations require." Id. On August 19, 1994 the DOT lowered the initial test cutoff levels for marijuana metabolites from 100 ng/ml to 50 ng/ml. 59 Fed.Reg. 42996 (August 19, 1994). On the revised scale, which had been in place for more than four years, Guthrie had a positive initial drug screen for marijuana metabolites.

Additionally, the screening (or initial) test is "an immunoassay screen to eliminate 'negative' urine specimens from further analysis." 49 C.F.R. § 40.3; see also 49 C.F.R. § 40.29(e). The second or "confirmatory" test is used to identify the presence of a specific drug or metabolite. Id. The confirmatory test "uses a different technique and chemical principle from that of the screening test in order to ensure reliability and accuracy." Id. The second

---

**3.** This rule was cited to Guthrie in the letter sent by CDC discharging him. (Pl.'s Supplemental Br. in Opp'n to Summ. J., Ex. A.)

**4.** The CDC Drug/Alcohol Policy is undated, but apparently it was created before 4/24/96 because page 10 was revised on that date and a revised page 10 provided to employees for insertion. CDC Drug/Alcohol Policy at x.

portion of a sample determined to be not-negative by the initial test is tested by the confirmatory test to determine if it is positive. *See* 49 C.F.R. § 40.29(f). The confirmatory test level for a positive marijuana screen as stated in the CDC drug and alcohol testing policy is 15 ng/ml, and, unlike the initial test cutoff level, has remained unchanged since the inception of both the company policy and federal regulation.[5] Guthrie's 73 ng/ml level of marijuana metabolites is a concentration almost five times the confirmatory level considered a positive urine screen for marijuana.

## III. CONCLUSION

Accordingly, Guthrie's discharge did not breach the CBA, which mandates immediate discharge for a urine screen positive for controlled substances, including marijuana. Because Guthrie's discharge did not breach the CBA, the Union had no duty to grieve the discharge or complain about it in some other fashion.[6] *See Vaca*, 386 U.S. at 191, 87 S.Ct. 903 ("A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.")

As noted above, to prevail in this action Plaintiff must prove both 1) the employer violated the terms of the CBA and 2) the Union breached its duty of fair representation. Guthrie has failed to prove the first and therefore, cannot demonstrate the second.[7] Accordingly, the Court GRANTS summary judgment for Defendants.

**5.** Guthrie argues, in his supplemental submission, that the company and union are free to negotiate drug testing parameters which are less stringent than the DOT regulations for the purpose of internal disciplinary action. (*See* Pl.'s Mot. for Leave to File Supplemental [Materials] at 3.) While this may be true, the confirmatory positive drug screen concentration in the company policy has always been 15 ng/ml. Guthrie failed a random drug screen because his urine contained 73 ng/ml cannabinoids.

**6.** As Plaintiff's submission correctly points out the CBA is unclear, at best, as to the proper

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.

procedure for an employee to follow when requesting a just cause explanation for discipline (CBA, Art. 11) as opposed to filing a grievance (CBA, Art. 7). Article 11 complaints must be made in writing within five (5) working days; neither the five-day limit nor the writing requirement applies to the grievance procedure under Article 7.

**7.** For this reason, the Court finds it unnecessary to allow Plaintiff to undertake further discovery regarding his duty of fair representation claim.